Points decided.

No. 2,099.

J. W. WRIGHT, RESPONDENT, *v.* THE OROVILLE GOLD, SILVER, AND COPPER MINING COMPANY *et al.*, APPELLANTS.

CORPORATION.—TITLE TO PROPERTY.—The legal title to the property of a mining corporation is vested in the corporation and not in the stockholders as such.

IDEM.—POWERS OF TRUSTEES.—The Board of Trustees of a corporation may control the corporate property within the limit which the law has assigned to the exercise of corporate authority.

IDEM.—ALIENATION OF PROPERTY.—Corporate acts, by which corporate property is alienated, if done pursuant to the prescribed mode, and not being in themselves *ultra vires*, are in point of mere law, binding upon the corporate title ; and through that title equally binding upon the interest of the stockholders.

IDEM.—EQUITABLE JURISDICTION.—In dealing with the relations between the corporation and its officers on one hand, and the stockholders on the other, in the management of the corporate affairs, Courts of equity will look beyond the mere observance of the forms of law, and inquire if the authority has been in good faith exercised to promote the interest of the stockholders.

IDEM.—CORPORATE AUTHORITY A TRUST.—The corporate authority is considered to have been conferred by the stockholders upon the trust and confidence that it will be exerted with the view to advance the interest of the stockholders, and not used with a purpose to injure or destroy that interest.

IDEM.—A Court of equity will, at the instance of a stockholder, control a corporation and its officers, and restrain them from doing acts even within the scope of the corporate authority, if such acts would amount to a breach of the trust upon which the authority had been conferred.

IDEM.—The Court will interfere to relieve an injured stockholder from loss after such an act has been done, provided no superior equity has intervened nor the rights of innocent third parties attached.

IDEM.—RIGHT OF STOCKHOLDER TO REDEEM.— Where the property of a corporation has been sold under execution and no steps are taken by the corporate authorities to redeem the property within the period limited by law, a stockholder may interpose and redeem the property for the benefit of the corporation, and hold it liable for the money advanced for that purpose, and by so doing he becomes the equitable assignee of the certificate of sale, and is subrogated to all the rights of the original purchaser at the sheriff's sale.

APPEAL from the District Court of the Second District, Butte County.

The facts are stated in the opinion.

*G. F. & W. H. Sharpe*, for Appellants.

*First*—A stockholder cannot maintain an action against the corporation for non-fulfillment of its duty. (*Smith* v. *Hurd*, 12 Met. 371; *Hopkins* v. *White*, 1 Head, 31; *Peabody* v. *Flint*, 6 Allen, 52; *Gorham* v. *Gilson*, 28 Cal. 479.)

*Second*—If any collusion was had between the directors themselves, or the directors and a third person, to the stockholders' injury, an action lies against the directors, not the corporation. (*Crook* v. *Jewett*, 12 How. Pr. 19; *Abbott* v. *Newman*, 8 Cush. 588; 2 Johns. 389; 3 Paige, 222.)

*Third*—The corporation, primarily, is the only proper party to sue for preservation of its property, or breach of trust by directors. If they refuse (no allegation of it here), the stockholders may. (*Hodges* v. *N. E. Screw Co.*, 1 R. I. 312; *Brown* v. *Van Dyke*, 4 Halstead, 795; *Hersey* v. *Veasie*, 24 Me. 9; *Allen* v. *Curtis*, 20 Conn. 456.)

*Fourth*—The property sold in this case is not the plaintiffs' or Jennings', but the defendants', and any action for its destruction, loss or injury, must be brought by the defendant and not the plaintiff. (*Gorham* v. *Gilson*, 28 Cal. 479.)

*Fifth*—If the trustees fraudulently refuse to levy assessments to liquidate indebtedness, plaintiffs' remedy was by injunction to compel them. (*Exeter & C. R. Co.* v. *Baller'* 5 Eng. Railway cases, p. 211.)

*Sixth*—Jennings was under no legal obligation to pay Josephi's debt. Having done so voluntarily, without request, he cannot make the defendant his debtor. (*Paynter* v. *Williams*, 1 C. and M. 819; *Doty* v. *Wilson*, 14 Johns. 378; *Gleason* v. *Dyke*, 22 Pick. 393.)

*W. C. Belcher* and *J. M. Burt*, for Respondent.

The very object, and purpose of private corporations is, to enable a considerable number of individuals, by a combination of capital, intellect and energy, to engage in, and successfully carry on, enterprises that single individuals could not carry on. The corporation is the creature of the law, created for the benefit of the individuals who compose it, and it is invested with rights, privileges and powers

solely for the benefit of its stockholders. It is simply a trustee to carry on and manage the business or enterprise for which it was formed, for the use and benefit of those who have their interest and property under its management for their own account. It acquires and holds property, real and personal, for their benefit. The trustees and officers of the corporation are only the agents through whom it manages and conducts its business. The stockholders are the *cestui que trust.*

The beneficiary can follow the property so long as those who deal with it know its condition, but no longer. When he can no longer follow the property, his remedy is against the faithless trustee. (*Sturges* v. *Knapp*, 31 Vt. 1; *Salomon* v. *Laing*, 12 Beav. 339; 6 Eng., Railway cases 222; *Dodge* v. *Wolsey*, 18 How. 331; *Cunliffe* v. *Manchester & Bolton Canal Co.* 480 n; *Ware* v. *Grand Junction Mateo Co.* Id, 470; *Bagshaw* v. *Eastern Counties Railway Co.* 7 Hare, Ch. R. 114; Angell and Ames 4th Ed. 424. and other cases there cited.

The appellant says plaintiff should have compelled the trustees, by injunction, to levy an assessment, but any one familiar with the law's delays, must see that unwilling trustees could very easily have protracted proceedings in a suit for injunction, so long that the title to the property would have passed to the purchaser before he could have obtained final judgment, or, having obtained it, could have made it available by the collection of the assessment. The only thing he could do, was himself to pay the money to the creditor and purchaser, taking the precaution which he took to obtain the written consent of the purchaser, and his direction to the sheriff to receive the money.

Plaintiff does not ask to make the corporation his debtor in respect of this transaction, but only that the corporation shall repay to him the money that he paid to redeem the property, or let him have the property. Which of these it will elect to do, he leaves with the corporation. And so was the judgment of the Court, that the corporation should pay the redemption money within sixty days, or that the title should pass to the plaintiff, the assignee of Jennings.

That certainly looks equitable, and, between man and man, no one would say it was unjust, particularly if the one to whom it was left to choose stood in a relation of trust and confidence to the other. Is it the policy of the law to put corporations upon a better footing than individuals, and to protect them in unjust dealings when it would not protect individuals?

But is it the law that Jennings was under no legal obligation to pay Josephi's debt, and that paying it, he was a simple volunteer?

The constitution provides that "each stockholder of a corporation, or joint-stock association, shall be individually and personally liable for his proportion of all its debts and liabilities," (Sec. 36, Art. IV) and the Court has held that a stockholder is not a surety or guarantor, but a principal debtor. (*Mokelumne Hill Canal Co.* v. *Woodbury,* 14 Cal. 266; *Prince* v. *Lynch,* 38 Id. 528;) In New York the same doctrine prevails, and is well settled by repeated decisions of the Court of Appeals. (*Corning* v. *McCollough,* 1 Comst. 47, (55); *Moss* v. *Averill,* 6 Selden, 449, (459). *Abbott* v. *Aspinwall,* 26 Barf, 202, (207).

Now if, under the law creating them, corporations and their stockholders are primarily reliable for the debts of the corporation as partners, or as the joint, or as the joint and several makers of a note, then it must follow, as a necessary incident to this relation, that the stockholder is under legal obligation to pay the debt, and has the right to do so at any time after its maturity; and paying, he cannot, in any sense, be called a volunteer; and having paid the debt, he has the right to look to the corporation to repay it, or if, as in this case, the debt was secured by any particular fund or particular property, he has the right to look to that particular property for his security. And if, as in this case, a sale has been made of the property, he has the right to redeem it from the sale, and to compel the corporation to affirm his act in the redemption by paying him the money he has advanced, or allow him to have the property.

This is but common justice, equity demands it, and the

Courts will enforce it.  So the case of *Prince* v. *Lynch* decides, for it is there said that contribution is one of the incidents attaching to the relation of corporation and stockholder under the law.

But even if this were not so; if there were any technical rule of law against this, of so long standing and so generally recognized that the Court felt bound to adhere to it by reason of its long established recognition, or the rights that had grown up under it, still the Court would hold, as the District Court held in this case, that the written consent of Josephi that Jennings might redeem, and his direction to the Sheriff to receive the redemption money, and the fact that the Sheriff did receive the money and did pay it over to Josephi, constituted an equitable assignment of all his rights as against the corporation and the property, and of his certificate of purchase to Jennings, and that the plaintiff, succeeding to the rights of Jennings as such equitable assignee, is entitled to all the relief granted by the District Court to him.

It would be difficult to find a case in which the equities were stronger than in this, in favor of sustaining the judgment and protecting the rights of the plaintiff.

Jennings owned valuable mines and a mill.  Parties desiring to join with him in working the mines form a corporation for that purpose, with the understanding that he shall furnish to the corporation the mines, mills and machinery, water-ditches, &c., and that they will furnish the money to carry on the work.  He conveys his mines, mill, &c., to the corporation, and receives 990 shares of full paid stock as the consideration.  They receive 1,010 shares of stock, to be assessed, from time to time, up to $100 per share.  The directors, instead of raising money by assessment, as they should have done, contract a debt with Josephi, give a note at usurious interest, and encumber the property to secure the payment of it; allow the mortgage to be foreclosed and the property sold ; allow the time for redemption to pass without making any effort to redeem, while more than $20,000 remained behind and unpaid upon the 1010 assessable shares

—more than twice the amount of the debt; not only passively and negligently allow the time to pass without any effort to redeem, but purposely and actively contrive that it shall pass without redemption, and so compel Jennings to redeem with his own money or lose all his interest in the property. He did redeem, and now these directors say, we did not ask you to do it. We preferred that Josephi should have the property, he would have conveyed it to us; we were interested in his judgment. You are a volunteer. The property is ours and we will neither pay you nor let you have it.

WALLACE, J., delivered the opinion of the Court, TEMPLE, J., CROCKETT, J., and RHODES, C. J., concurring:

It appears that Jennings, being the owner of certain mining property and grounds, the Oroville Gold, Silver and Copper Mining Company was organized and incorporated with a view to purchase them. The capital stock of the corporation consisted of 2,000 shares, of the nominal value of $100 per share, and Jennings sold this mining property to the corporation for 990 full paid shares of its stock, and the remaining 1010 shares, issued to the other stockholders, were to be assessed so as to carry forward the working of the mine, etc.

In point of fact, however, the assessment upon these shares, afterward imposed, did not exceed twenty per cent. upon their nominal value, and the result was a debt incurred by the corporation to one Josephi, a mortgage by the corporation to secure its payment, a foreclosure of the mortgage, and a sale under a decree for upward of $8,000, at which sale Josephi, at that sum, became the purchaser of these entire mining grounds, which were worth some $16,000, and were all the property owned by the corporation. There was no effort on the part of the corporation to redeem from the sale; in fact, the president of the corporation was himself interested with Josephi in the mortgage debt, and the president and some of the trustees, who controlled the corporation, contrived to bring about this mortgage sale with a view to

deprive it of the title to the property and cause it to vest in Josephi. The result of this maneuver (and doubtless its purpose) was to wrong Jennings out of the entire consideration he was to receive for the property which he had sold to the corporation.

In pursuance of this scheme nearly the whole period of time allowed by law for redemption was permitted to elapse without an effort on the part of the corporation or its officers to redeem from the sheriff's sale. In fact the last redemption day had arrived, and still no step toward a redemption had been taken. Under these circumstances, and near the the close of that day, Jennings himself, in behalf of the corporation, tendered to the sheriff the necessary amount to effect a redemption, and that officer, under the direction of Josephi, the purchaser at the sheriff's sale, accepted the money so tendered.

Subsequently, Jennings assigned to the plaintiff, Wright, all his shares of stock and his claim against the corporation by reason of the redemption from the Josephi sale; and thereupon the plaintiff, Wright, made a demand upon the corporation, who still retained possession of this property, for the repayment of the moneys so advanced by Jennings to effect the redemption, and upon refusal, he brought this action.

The Court below adjudged that the corporation repay this amount, with interest, within sixty days, and if not so paid, then that the title to the mining property vest in the plaintiff.

From this decree the corporation brings this appeal.

The mere legal title to this mining property is undoubtedly vested in the corporation itself, and not in the stockholders as such. The board of trustees may, therefore, control the property, provided that, in doing so, it do not act beyond the limit which the law has assigned to the exercise of corporate authority. Corporate acts, by which corporate property is alienated, if done pursuant to the prescribed mode, and not being in themselves *ultra vires*, are, in point of mere law, binding upon the corporate title; and,

through that title, equally binding upon the interest of the stockholders themselves. The Board of Trustees is the elected representative of the shareholders, who have, by the fact of election, conferred this authority upon it.

But the Courts of equity, in dealing with the relations between the corporation and its officers upon the one hand, and the stockholders upon the other, in the management of the corporate affairs, look beyond the mere observance of the forms of law, and inquire if the authority has been, in good faith, exercised to promote the interest of the stockholders. The corporate authority is considered to have been conferred by the stockholders upon the trust and confidence that it will be exerted at least with the view to advance the interest of the stockholders, and not used with a purpose to injure or destroy that interest. And it is settled that Courts of equity in this country will, at the instance of a stockholder, control a corporation and its officers, and restrain them from doing acts even within the scope of corporate authority, if such acts, when done, would, under the particular circumstances, amount to a breach of the very trust upon which, as we have seen, the authority itself has been conferred. (*Dodge* v. *Woolsey*, 18 How. 341.)

And upon the same principle the Court will, even after such an act has been done, relieve an injured stockholder from loss if, in the meantime, no superior equity has intervened, nor the rights of innocent third parties attached.

It appears, in this case, that the corporation, having acquired all its property from Jennings, gave him as the consideration therefor a little less than one half of its entire capital stock, and issued to other persons the remainder of the stock. By this means Jennings lost the control of the property; and while it was agreed that the necessary working funds should be raised by assessment of the stock of these other persons, those who were to be thus assessed were clothed with the entire authority of regulating the assessments. Jennings would, of course, be outvoted whenever a question of the propriety of levying an assessment was in hand. The assessment-paying majority had the most

absolute security, in this case, against the levying of excessive assessments upon them, and seem to have made good use of that security. The same majority, with the president and trustees at their head, soon found it more convenient to allow the corporation to contract a large debt than to assess themselves at all.

The record exhibits the grossest breach of duty and good faith upon the part of the president and trustees toward Jennings. They not only did not keep their promise to him—that they would provide the means of working the mine by levying assessments on the assessable stock—but they actively engaged in a scheme to deprive him of his property altogether, and used their corporate power to promote that end.

The president, who was bound by every consideration of honesty and honor to use his earnest endeavors to protect the interest of Jennings, (which had been put in peril by the failure to collect the stipulated assessments) acquired for himself an interest in the debt to Josephi. He was thus become really a creditor of the corporation and of Jennings, while he seemed to be a joint debtor with them. He was a trustee of Jennings, by virtue of his position as a member of the Board, while really he was exercising all his authority to sacrifice the interest of his *cestui que trust*, and to place the trust property into the hands of a stranger. At the last moment, Jennings prevented the consummation of the wrong by paying off the debt with his own funds. There was then remaining no other means to defeat the scheme. It is difficult to see why Jennings might not protect himself in this manner.

Nor was the payment Jennings thus made merely voluntary on his part, in that sense which would deprive him of recourse against the corporation. His relation to the Josephi debt, arising out of his being a stockholder in the corporation, and as being, therefore, to some extent, personally liable therefor, gave him such an interest in the discharge of the debt as not only entitled him, if he chose, to pay it off altogether, but the circumstances here appearing

constituted him the equitable assignee of the certificate of sale, and subrogated him to the rights of Josephi himself as the purchaser of the property at the foreclosure sale.

I see no error in the judgment—certainly none against the appellant.

Judgment affirmed.

SPRAGUE, J., expressed no opinion.