ROGERS ET AL. *v.* THE LAFAYETTE AGRICULTURAL
WORKS ET AL.

INJUNCTION.—*Corporation.*—An injunction will not lie to prevent the board of directors of a corporation from merely allowing as correct a fraudulent account against the corporation.

DEMURRER.—*Capacity to Sue.*—The question of the want of capacity of the

Rogers *et al. v.* The Lafayette Agricultural Works *et al.*

plaintiff to sue cannot be raised under a demurrer to the complaint for its failure to state sufficient facts to constitute a cause of action.

SAME.—*Sufficiency of Facts.*—If the plaintiff be entitled, under the facts stated in his complaint, to any relief, whether injunctive or in some other form, against any defendant, a demurrer to the complaint, for want of sufficient facts, filed by such defendant, should be overruled.

CORPORATION.—*Action of Stockholders for Relief from Wrongful Acts of President.*—An action will lie in favor of a stockholder of a corporation for relief against the wrongful acts of the president thereof, when it is shown that a large per cent. of profits on the capital stock has been made by the corporation, and that the president will not allow the books of the corporation to be made to show the same; that the president is largely indebted to the corporation for the use of its property for his individual purposes and profit; that he has received all the emoluments of the corporation, and has not accounted therefor; that the majority of the directors are under his influence and control, and are instruments to do his bidding, and have abdicated their proper functions and surrendered the entire control of the affairs of the corporation to him; and such plaintiff need not allege that, prior to the commencement of his action, he has made a demand upon the board of directors to commence suit against the president. And where all the stockholders are made parties to the action, this is equivalent to such plaintiff's suing for himself and all other stockholders similarly situated.

From the Tippecanoe Circuit Court.

*B. W. Langdon* and *J. A. Stein,* for appellants.

*Wilson & Adams, J. R. Coffroth* and *Chase, Wilstach & Chase,* for appellees.

DOWNEY, J.—This was an action by George Rogers, James H. Telford and Henry M. Carter against The Lafayette Agricultural Works, Thomas P. Emerson, John Purdue, Martin L. Pierce, William Clark, Hiram W. Chase and John Levering. It is alleged in the complaint, in substance, that about the 1st day of October, 1867, the said Lafayette Agricultural Works became an incorporated company under the laws of the State of Indiana, with a capital stock of one hundred thousand dollars, divided into shares of fifty dollars each; that the plaintiff George Rogers became a shareholder in the sum of five thousand dollars; the plaintiff James H. Telford became a share-holder in the amount of —— hundred dollars; and the plaintiff Henry M. Carter, in

the amount of seven thousand five hundred dollars, all as original subscribers to the stock of said company, and yet own the same; that said defendant John Purdue became the owner, by subscription and purchase, of about eighty-three thousand dollars, which he still owns; that the defendants Martin L. Pierce, William Clark, Hiram W. Chase, John Levering and Thomas P. Emerson are the only other stockholders; but in what proportions the last named persons are such holders the plaintiffs cannot state.

It is alleged that the first directors of said company were the said John Purdue, Adams Earl, Fred. Geiger, Henry Taylor, M. L. Pierce, John Levering and John G. Sample, who elected said John Purdue president, George Rogers treasurer, etc., and Henry M. Carter superintendent of the works, and the company commenced business; that the object was to manufacture the reaper and mower known as the Buckeye machine, then and since in general use; that the company became the owner of real estate, machinery, tools, etc., and during the first year manufactured and sold a large number of such reapers and mowers at great profit, making thirty per cent. net upon the entire capital stock, and the same was the case during the next or second year, and the third year the profits would have been still greater but for the facts following; that said Purdue, before the end of the third year, became the owner of stock to the amount of eighty thousand dollars, well knowing that the business had been and was likely to continue profitable, and commenced dictating to the officer keeping the accounts as to the manner of discharging his duties; and when, after the second year, that officer was preparing his showing of operations for that year, and was desirous of making an inventory, Purdue forbade the taking of such invoice and the making of any balance sheet, and demanded his retirement from office, and in October, 1869, caused the election of a new board of directors, consisting of John Purdue, Martin L. Pierce, William Clark, Hiram W. Chase, James H. Telford, Thomas P. Emerson and John Levering; and, to qualify them to be

directors, it is alleged that Purdue voluntarily assigned to Martin L. Pierce, William Clark and Hiram W. Chase, stock in the company, so that, with the votes of said Pierce, Clark and Chase, he became the sole arbiter of the business of the company and its operations. It is further stated that the directors so elected organized by re-electing said John Purdue president, and at his request he was, by a resolution of the board, intrusted with the entire and exclusive control and management of the business of the company. At the same meeting, John Levering was elected secretary, Martin L. Pierce treasurer, and John Purdue executive committee. It is alleged that Purdue was unfit for the discharge of any of such duties, was unacquainted with the machinery in use, unskilled in mechanics, ignorant of book-keeping, and incompetent from age and want of memory. Yet the said directors continue to intrust to him the management of the business of the company, and in nowise changed the resolution by which he was so intrusted; that immediately after such powers were so intrusted to him, he placed in charge of the books persons willing to do his bidding, and improper charges have been made in his favor against the company for money which he claimed to have loaned the company, but without any authority from its directors or stockholders. He has purchased real estate not necessary to carry on the operations of the company, without the consent of the corporation or the authority of the board of directors, at large expense, which he has caused to be charged to the company. He has charged the company for money loaned, in the sum of about sixty thousand dollars, which he was not authorized by the company to borrow, and for which he had no authority to bind the company, and for which there was no necessity, etc., and he is claiming to have expended the same in erecting for the use of the company buildings on the company's grounds without any necessity therefor, etc. It is further alleged that for six years after the organization of the company, Purdue caused it to be understood by the other shareholders of the company that he would make no charge for

his services, and no charges were entered upon the books in his favor until December, 1873, when, without the consent of the directors, he caused to be entered on the books charges in his favor in the sum of fifteen thousand dollars, for his salary as president, to which he had no right. He has also charged for interest thirty-four thousand dollars, at ten per cent., which was without authority. He, by his mismanagement, failed to secure a renewal of the right from the patentees to manufacture the Buckeye reaper and mower, but on his individual account became interested in the "Planet" machine, and engaged in the manufacture and improvement of that machine, and for this purpose used the buildings, machinery, etc., of the company, the use of which was worth fifteen thousand dollars per year, which he has kept from the books of the company, which were under his exclusive control; and that the company had no interest in the manufacture, etc., of the Planet machine. It is alleged that there is a charge on the books in his favor, amounting to thirty-six thousand dollars for such expenses, which depreses the stock of the company. He has, from the time of the organization of the company, received all the emoluments, has refused to insure, and has placed in the shop incompetent men, including three of his nephews.

It is further alleged that he has given out within ten days, through his counsel, that it is his purpose to have his account against the company, as it appears upon the books, audited and ordered to be paid, and put the same into judgment, and press the same to execution, and sell the property and franchises of the company so as to exhaust its entire assets and stock; that he has in the board of directors three members to whom he gave stock, one of them being his nephew, and that, excepting the plaintiff Telford and the defendant Levering, all the directors are willing and will consent to audit said Purdue's account as it appears on the books, without any question as to the propriety of the items thereof charged to be unjust; that, in pursuance of his threat, he caused a meeting of the board of directors to be assembled at his

room in the Lahr House, in, etc., on Friday, the 9th day of October, 1874, at which all the directors, except the plaintiff James H. Telford, were present, and at which the only business was the reception of the resignation of Thomas P. Emerson as one of the directors and the appointment of a committee, consisting of M. L. Pierce, H. W. Chase and William Clark, to examine the books and accounts and report at an adjourned meeting, to be held at, etc., on the 12th day of October, 1874; that, unless restrained, the committee will, on that day, report in favor of the account, and the board will allow the same and order it to be paid, and thus enhance the difficulties of getting a just settlement of the account between Purdue and the company, and thereby greatly prejudice the interests of the plaintiffs as such shareholders in the company. Prayer,

1. That the directors and the company be restrained from admitting or allowing any claim of Purdue against the company until the further order of the court.

2. That the board be required to cause the property of the company to be adequately insured.

3. That the interest, advancements for unnecessary buildings and real estate made by said Purdue without proper authority, the account for salary of said Purdue, and all the matters of the "Planet" account be declared illegal and improper charges against the company; and that the board of directors cause the books of the company to be so corrected as to show said account correctly when ascertained by the court.

4. That the court may take the account between the company and the said Purdue on the basis herein claimed.

5. That by order of the court the said board of directors be adjudged to resume the control of the business of said company, and to suspend the functions intrusted to said Purdue by its orders of October, 1869.

6. That the plaintiff may be granted such other and further relief in the premises as may be just, equitable and proper.

The complaint was filed on the 12th day of October, 1874, in term, at which time an injunction was granted until the 17th day of that month, when a several demurrer to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action, was filed. On a subsequent day of the term, the demurrer was sustained, the complaint adjudged insufficient, and the injunction dissolved. This ruling of the court is assigned as error.

It is said in the brief of counsel for the appellees, that the demurrer was based on two propositions; first, that the plaintiffs had not legal capacity to maintain this action to the extent of the relief asked; and, second, that the complaint does not state facts sufficient to constitute a cause of action.

Under the first proposition, it is submitted that a stockholder cannot maintain an action against the corporation in which he is such share-holder, under circumstances such as those disclosed in the complaint.

We have seen that the only ground of demurrer was, that the complaint does not state facts sufficient to constitute a cause of action. For this reason there is no question before us as to the want of capacity of the plaintiffs to sue. As to what is meant by want of capacity to sue, see *Debolt* v. *Carter*, 31 Ind. 355.

The other ground of objection to the complaint is, that it does not state facts sufficient to constitute a cause of action.

If the plaintiffs were entitled to relief against any of the defendants, as to such defendants the demurrer should have been overruled. If the plaintiffs were entitled to any relief under the complaint, whether injunctive or in some other form, the demurrer should have been overruled.

The main ground relied upon by the appellants is, that the complaint presents a proper case for an injunction.

It is submitted by counsel for the appellees, that the plaintiffs, as stockholders, cannot maintain the action; that, although stockholders in a corporation may maintain an action, in their own names, against the corporation and other stockholders and the directors, where a majority of the

directors commit acts, in the management of the corporation, whereby stockholders of one class receive greater profits or privileges than other stockholders, yet, to authorize such a suit, there must be such fraud charged against a majority of the directory as will amount to a breach of trust, or where the acts of the directors are *ultra vires* the corporate authority; and that they cannot sue for mere mismanagement or because so large profits have not been made to the corporation as could have been made under a different management.

Counsel for the appellants submit that the circumstances under which stockholders can maintain an action against the corporation and a majority of the board of directors, without making previous demand upon the directors to sue, occur whenever the capital or profits of the company are about to be misapplied or wasted by them, so as to result in lessening the dividends or impairing the value of the shares of stock; and such misapplication or waste is, 1. *Ultra vires.* 2. Fraudulent. 3. Is threatened by a majority under the control of the wrong-doer.

It is urged that " any application of the credits or property of a corporation, that would depreciate stock, to purposes or objects outside the purview of the organic act, is *ultra vires*. To apply them to external enterprises, or adventures, or objects of charity, or any other end than that contemplated by its charter, is liable to this objection. The rule cannot be disputed. Here the effect of making a settlement and passing the accounts of Purdue, without deducting the rental of the company's capital, works and machinery, amounting to about forty-five thousand dollars — ignoring even its existence, as charged in the bill—is equivalent to an appropriation of that amount to Purdue without any consideration. It is, in effect, a pure donation of that sum. It is a misapplication or waste without color of justification in the charter. There is no power to do this."

When a person embarks his means in the enterprises of a corporation, he thereby agrees that the affairs of the com-

pany shall be directed and controlled by such directors or other controlling body as the stockholders may designate, and he has no ground to complain while such directors, etc., carry forward such enterprises in good faith and within the authority conferred by the charter. But neither the directors nor the majority of the stockholders can do as they please with the property represented by the shares of the stockholders. They must not act fraudulently, nor must they exceed the powers conferred upon them by the law creating or governing the corporation.

The protection of the rights of share-holders in incorporated companies against the improper or illegal action of other share-holders or of the officers of the company is a favorite branch of the jurisdiction of equity by injunction, and it may be asserted, as a general rule, that courts of equity will enjoin, on behalf of the stockholders of an incorporated company, any improper alienation or disposition of the corporate property for other than corporate purposes, and will restrain the commission of acts which are contrary to law and tend to the destruction of the franchises, as well as the improper management of the business of the company, or a wrongful diversion of the funds. And, in such cases, equity may grant relief at the suit of a single stockholder. So, if the managers of the company are about to engage in any enterprise not contemplated by their charter, or are proceeding to apply the corporate funds to any other than corporate purposes, or, in general, if they are transcending their charter, equity will interfere. High on Injunctions, sec. 767; *March* v. *The Eastern R. R. Co.,* 40 N. H. 548; *Dodge* v. *Woolsey,* 18 How. (U. S.) 331.

Courts of equity rarely interfere with the exercise of discretionary powers by corporate bodies or their officers to whom such powers are confided. And it is a well settled principle of equity, that where acts requiring the exercise of judgment, science and professional skill are confided to the discretion of the officers of a corporation, the exercise of that discretion will not be legally disturbed, nor will such officers

be enjoined, except when abusing their powers to the injury of others.   High Injunction, sec. 763.

The only act, which it is alleged is about to be done, sought to be enjoined, is the apprehended allowance of the account of Purdue, when it shall be reported upon by the committee.   Every other act of which complaint is made is already accomplished.   Would the allowance of the account, as correct, be such an act as would justify the granting of an injunction?   Would that act work such irreparable mischief or damage as to justify the interposition of the court?   We think it clear that the mere allowance of a fraudulent account, and such this must be if the allegations of the complaint are true, would not conclude any one.   *Waite* v. *Windham County Mining Co.*, 36 Vt. 18.

We conclude that, so far as the complaint sought injunctive relief, the demurrer to it was properly sustained.   If it appeared that irreparable damage would result to the plaintiffs by the allowance of the account, the case might be different.   No authority has been furnished showing that an injunction has ever been granted to restrain such an act.

We are next to inquire whether or not the complaint shows the plaintiffs entitled to any relief other than by injunction, and whether or not they are in a condition to assert such right.

It appears from the complaint that the company made thirty per cent. profits on the capital stock during the first year and the same amount during the second year.   It is also alleged that profits to a greater amount were earned during the third year, which Purdue would not allow the books to be made to show.   It is also alleged that he is largely indebted to the company for the use of its machinery, etc., while engaged in experimenting upon and manufacturing the Planet Reaper and Mower.   It is alleged that he has, from the time of the organization of the company, received all the emoluments of the company, and has not accounted for the same.

VOL. LII.—20

It is alleged that the directors are under the influence and control of Purdue and are instruments to do his bidding; that they have abdicated their proper functions and surrendered the entire control of the affairs of the corporation to him, three of them, and one of the three being his nephew, not having been *bona fide* stockholders, but having been made such by the voluntary transfer of stock to them by Purdue, to qualify them to act as such.

Under these circumstances, it seems to us to be unnecessary for the plaintiffs to show that they demanded of the board of directors to commence an action against Purdue, before they commenced this action. *March* v. *Eastern R. R. Co.*, 40 N. H. 548; *Robinson* v. *Smith*, 3 Paige, 222; *Dodge* v. *Woolsey*, 18 How. 331; *Brewer* v. *Boston Theatre*, 104 Mass. 378; *Hodges* v. *New England Screw Co.*, 1 R. I. 312; *Goodin* v. *The Cincinnati, etc., Co.*, 18 Ohio St. 169; *Peabody* v. *Flint*, 6 Allen, 52; *Sears* v. *Hotchkiss*, 25 Conn. 171; *Wright* v. *The Oroville, etc., Co.*, 40 Cal. 20; *Allen* v. *Curtis*, 26 Conn. 456.

With reference to the right of a stockholder to maintain an action to compel a dividend, see *Smith* v. *Prattville Manufacturing Co.*, 29 Ala. 503.

We think the complaint is sufficient to entitle the stockholders, who are plaintiffs, to maintain the action, not for an injunction, but for relief against the wrongful acts of Purdue. To what extent the directors acting in the interest of Purdue and in disregard of their duties as such are liable, if at all, we need not now decide. *Sed vide Bartholomew* v. *Bentley*, 1 Ohio St. 37.

Where stockholders sue, it is usual for them to sue for themselves and all others similarly situated. But in this case all the stockholders are parties to the action, which may be regarded as a compliance with this rule of practice.

The judgment is reversed, with costs, and the cause remanded, with instructions to overrule the demurrer to the complaint.