[S. F. Nos. 7126 and 7298. Department One.—May 9, 1917.]

LOUIS M. MacDERMOT et al., Appellants, v. MARY E. HAYES, as Executrix of the Estate of Thomas R. Hayes, Deceased, et al., Respondents; STANDARD PORT-LAND CEMENT COMPANY, Appellant.

FINDINGS—CONSTRUCTION OF.—A finding must be construed so as to support the judgment, if reasonably possible.

SALE OF BONDS—PRINCIPAL AND AGENT—PRESUMPTION OF FAIR DEALING. Fair dealing is presumed, and in the absence of knowledge or notice to the contrary, one offering bonds of a corporation for sale to another, who is acting as agent for a third person in the investment of money, has a right to proceed on the assumption that the principal does not want to take stock, called a bonus but sold by the corporation with the bonds to the person making the offer, and he therefore has a right to sell the stock to the agent, although such agent at the same time buys the bonds for his principal.

INVOLUNTARY TRUST—STOCK BONUS — TRANSACTION OF CONFIDENTIAL AGENT.—A confidential agent in control of his principal's money with full power to invest it at his own discretion, is chargeable as an involuntary trustee of shares of corporate stock taken in his own name, which were received by him as a bonus on the purchase of bonds of the corporation with his principal's money.

ID.—ESTABLISHMENT OF TRUST — MANNER OF TAKING STOCK — OPPOSITE INFERENCES FROM ESTABLISHED FACTS—FINDINGS CONCLUSIVE UPON APPEAL.—In an action to establish an involuntary trust in shares of corporate stock, where the facts authorize opposite inferences as to the manner in which the stock was taken, the finding of the trial court that the stock was taken without any obligation to account therefor as voluntary or involuntary trustee will not be disturbed on appeal.

ID.—DECISION UPON INFERENCES—RULE UPON APPEAL.—Where the facts established may reasonably authorize opposite inferences and the trial court has adopted one and rejected the other, its decision is binding upon the appellate court, the case being in substance the same as where the court decides upon the weight of contradictory evidence.

CONFIDENTIAL RELATION.—If a father who is agent for a third person buys property from his son for such third person, he does not thereby bring the son into confidential relations with such third person, or impose any duty upon the son to inquire into the good faith of his father in the transaction.

ID.—PERSONAL USE OF PRINCIPAL'S MONEY BY AGENT—ACCOUNTABILITY. Where an agent avails himself of an opportunity of buying bonds

of a corporation with his principal's money for the purpose of benefiting himself by taking bonus stock in his own name, which he conceals from his principal, it is immaterial whether the stock is given to him or obtained through the form of a purchase with the bonds; in either case he is bound to give the benefit to his principal, and he cannot hold the property against the demand of the latter.

Id.—Disclosure of Details and Benefits of Deal—When not Required.—Where owners of corporate stocks and bonds give another the option or privilege of selling them for his own account, the sole condition being that he must pay the full price for each bond and the corresponding stock sold as a bonus therewith, he is, in legal contemplation, the owner, and he is under no obligation to disclose to the agent of one to whom he is offering the bonds for sale, or to the principal himself, the conditions upon which he is authorized to sell the bonds, nor the benefits which could be derived therefrom, or, if he does disclose to the agent the fact that he is to receive a stock bonus with each bond, he is under no obligation, in equity and good conscience, to offer both to the agent for his principal, even if he has knowledge that the former is investing the money of the latter.

Id.—Purchase of Stock—Lack of Notice of Action—Protection from Judgment.—A purchaser of stock who paid full value therefor and who had no actual notice of the fact that an action was pending to have it declared that the stock was held in trust takes the same free from any judgment that may be rendered in the action, since the doctrine of *lis pendens* is inapplicable to such an action.

Id.—Breach of Trust—Innocent Purchasers—Revesting of Property in Original Party—Effect of.—The rule that if property comes back into the hands of the original trustee, who was guilty of fraud against his beneficiary in disposing of it, or into the hands of anyone affected with the guilt of the original transaction, he will be a trustee for the defrauded party, although the property may have passed through several innocent hands, does not apply in a case where the only basis in the pleadings to establish an involuntary trust is predicated upon the allegation that the property was purchased with the beneficiary's money, but this allegation is negatived by the findings, which are supported by the evidence.

Lis Pendens.—Section 409 of the Code of Civil Procedure, relating to notices of action to quiet title or recover possession of real property is supplementary to the common law, and the latter governs all cases not covered by the statute.

Id.—Estoppel of Principal.—One who places his money in the possession and control of another, who thereupon uses it in the purchase of corporate bonds with a stock bonus, and thus becomes enabled to take the stock in his own name without anything on its face to identify it as the property of his principal, is estopped to

claim title to the stock as against a purchaser for value and in good faith from the agent, who relied upon the apparent ownership.

ID.—Trust in Other Shares—Pleading and Evidence.—Where it is sought to enforce an involuntary trust by compelling a transfer from the trustee of similar property in lieu of that which has passed out of the control of the trustee, it must be alleged and proved that the defendant is in a position to make such delivery.

ID.—Refusal of Leave to Amend Complaint—Lack of Diligence.— In such an action the refusal of leave to amend the complaint was not an abuse of discretion, where the amendment would have raised new issues and was not sought until the second trial, seven years after reversal on appeal, and until after at least two amendments thereto had been made relating to the stock.

ID.—Transfer of Stock—Conflicting Claimants—Duty of Corporation.—With respect to making transfers of stock as between opposing claimants thereof, the corporation occupies the position of an agent or trustee of both, and is bound to the exercise of good faith.

Constructive Notice—Pendency of Action.—The common law that the pendency of an action relating to personal property imparts constructive notice thereof to all persons dealing with the property does not apply in this state to actions to declare and enforce a trust in personal property.

ID.—Transfer of Stock Pending Action—Unauthorized Act.—A corporation after an action has been commenced to establish an involuntary trust in certain of the shares of its capital stock is not authorized to transfer the shares on its books to a new party, or in any manner hinder or delay the plaintiffs in the action, unless by their consent, or under permission of court.

Corporations—Relation to Stockholders.—A corporation is created and given a legal existence in order that it may, in its legal capacity, hold and manage the property transferred and business committed to it by its stockholders. They are the beneficial owners of the corporate property. The corporation is their agency and holds the property for their benefit and in trust for them. The interest of each stockholder in the property is the proportion which his shares of stock bear to all the stock outstanding. The certificates are not property in the real sense, but are merely evidence of the undivided interests of the several stockholders in the corporate assets and business.

ID.—Transfer of Assets—Judgment Binding upon Assignee.—Where a "corporation," without consideration, receives the property belonging to a "company," upon which it issues its capital stock and offers the same to the holders of stock in the "company" at the rate of two for one, they being the owners of the beneficial interest in the property, all being done with notice by the officers of the "corporation" of the pendency of an action to have it declare that

plaintiffs are the owners of certain shares of the "company," under section 1908 of the Code of Civil Procedure, a judgment in the action is conclusive against the "corporation," whether it is a party to the action or not.

Id.—Disputed Ownership of Stock—Payment of Dividends—Liability of Corporation.—A corporation in the payment of dividends on shares of its stock to the record owners thereof, where the ownership is being litigated, does so at its peril, and cannot be allowed to obtain any benefit or advantage by an erroneous decision as to which of the claimants is entitled to such dividends.

Id.—Demand for Dividends—Statute of Limitations.—Where the ownership of corporate stock is being litigated, it is not necessary for the true owners to make a demand upon the corporation for dividends, unless they knew or had good reason to believe that dividends had been declared, and the statute of limitations does not begin to run until a demand is made therefor.

APPEALS from a judgment of the Superior Court of the City and County of San Francisco, and from orders denying a new trial. James M. Seawell, Judge.

The facts are stated in the opinion of the court.

Grant & Zimdars, William H. Bryan, and Geo. W. Towle, for Appellants and Respondents Louis M. MacDermot et al.

Charles W. Slack, for Appellants and Respondents Mary E. Hayes, as Executrix, etc., et al.

Morrison, Dunne & Brobeck, for Appellant and Respondent Standard Portland Cement Company.

W. H. Smith, Jr., for Appellant and Respondent L. F. Young.

SHAW, J.—The plaintiffs appeal from the judgment so far as it is against their claim set forth in the complaint, and the defendants Standard Portland Cement Company and cross-defendant L. F. Young each appeal from the judgment and from an order denying a motion for a new trial. By stipulation, all the appeals are presented on one transcript of the record. The plaintiffs' appeal is numbered 7126 and those of said defendants are numbered 7298 on the register of this court.

The action was begun on March 29, 1904, Charles Main being the original plaintiff and Thomas R. Hayes, individually and as executor of the estate of C. E. Hayes, deceased, and Standard Portland Cement Company the original defendants. Main afterward died and his estate was distributed to Flora B. MacDermot, who was substituted as plaintiff. She also died and her estate was then distributed to the present plaintiffs, who have been duly substituted as plaintiffs in her stead. Thomas R. Hayes subsequently died and Mary E. Hayes, as his executrix and as administratrix with the will annexed of the estate of C. E. Hayes, deceased, has been duly substituted as defendant. The case was tried prior to April, 1906, and the resulting judgment for the defendants was reversed on appeal. (*Bone* v. *Hayes,* 154 Cal. 759, [99 Pac. 172].) Afterward, by order of the court, the Cement Company, in October, 1911, filed a cross-complaint, bringing in James B. Smith, F. A. Losh, and L. F. Young as parties to the action. The judgment now under review was the result of the second trial. The respective appeals will be considered together.

The object of the action as set forth in the prayer of the original complaint was to have six hundred shares of stock of the Standard Portland Cement Company, evidenced by certificates 78, 79, 80, 84, 85, and 170, declared to be the property of the original plaintiff, Charles Main. The ground of the claim is that said shares of stock were purchased by Thomas .R. Hayes with moneys of Main held in trust by Hayes, that Thomas R. Hayes took three hundred of said shares in his own name, being certificates 78, 79, and 84, and that C. E. Hayes took the remaining three hundred shares in his name, being certificates 80, 85, and 170, with knowledge of the fact that they had been paid for by Thomas R. Hayes with the moneys of Main. Certain undisputed facts showing the conditions existing when the alleged cause of action arose will be first stated.

In 1902, William J. Dingee and William G. Henshaw owned a large tract of land on which they proposed to establish a cement factory. They organized a company, called it Standard Portland Cement Company, and conveyed to it the land in exchange for all of its capital stock, which was nominally two million dollars, divided into twenty thousand shares of the face value of one hundred dollars each. The company then created a bond issue of five hundred thousand dollars,

consisting of five hundred bonds of one thousand dollars each. These bonds were then sold and delivered to Dingee and Henshaw, who were to pay for them at par as tendered to them by the company. The object was to raise the money in this manner wherewith to build the cement works. The plan was that they should sell the bonds to others for cash and take up the bonds, as sold, until sufficient money was obtained. To induce purchases, they offered to sell twenty shares of the company stock and one bond to any purchaser, at the price of one thousand dollars for both bond and stock. The stock was called a bonus, but the transaction, when complete, was, in its legal aspect, as much a sale of the stock as of the bonds. We deem it unnecessary to discuss the distinction sought to be made by the defendants on this point further than to say that it has no substantial existence. Thomas R. Hayes was the father of C. E. Hayes. The latter was an employee of Dingee and Henshaw and a personal friend of Henshaw. He was on a fixed salary, but there was an understanding that he would have an opportunity to make some additional money if from their operations it should become available and seem advisable. By his will, C. E. Hayes gave all his property, including his right, title, and interest in the three hundred shares of stock so issued to him, to his father. Thomas R. Hayes was, and long had been, the confidential agent and trustee of Charles Main, the original plaintiff, in control of Main's money and empowered as such agent to invest it at his own discretion. This was fully known to C. E. Hayes at the time of the transactions in question.

The complaint is in three counts. It states the causes of action with great detail. In substance, the charge is that Thomas R. Hayes, as agent of Main and with Main's money, purchased for Main from Dingee and Henshaw twenty-five of these bonds and six hundred shares of the stock for twenty-five thousand dollars; that C. E. Hayes assisted his father in making the purchases and was fully aware of all the facts; that Thomas R. Hayes accounted for and delivered to Main all of the bonds, and did not deliver to him any of the stock, but that he and his son caused three hundred shares thereof, certificates Nos. 78, 79, and 84, to be issued to Thomas R. Hayes and the remaining three hundred shares, certificates Nos. 80, 85, and 170, to be issued to C. E. Hayes; that said stock was issued solely in consideration of the purchase

of said bonds and the payment of said sum of money. The first count relates to fifteen of these bonds and three hundred shares of the stock, being certificates 78, 79, and 80, which were purchased on September 29, 1902; the second count to five of the bonds and two hundred shares of stock, being certificates Nos. 84 and 85, which were purchased on October 4, 1902; and the third count to the remaining five bonds and one hundred shares of stock, being certificate 170, which were purchased on January 8, 1903. It is alleged in the original complaint that on October 4, 1902, Thomas R. Hayes bought five bonds, in consideration of which two hundred shares of stock were issued as a bonus, one certificate, No. 84, being taken in his own name and the other certificate, No. 85, being taken in the name of C. E. Hayes, each for one hundred shares. By amendments filed in 1913, it is alleged that only one hundred shares of stock were issued in consideration of the purchase of these five bonds on October 4, 1902, to wit, either certificate 84 in the name of Thomas R. Hayes, or certificate No. 85 in the name of C. E. Hayes, and further, that on that day Thomas R. Hayes, through and by C. E. Hayes, purchased ten of said bonds, five with Main's money and the other five partly with his own money, in consideration of which purchase the said two certificates were issued. It is not alleged that any of Main's money was used to pay for the second five of this block of ten bonds. Consequently, as the pleadings stood at the time of the trial, the claim was for five hundred shares of stock instead of the six hundred originally claimed, and it was left uncertain whether the plaintiff claimed certificate 84 or 85 in consideration of the purchase of five of the bonds on October 4, 1902. It will be observed that the charge, in effect, is that these twenty-five bonds and the accompanying stock were purchased by Thomas R. Hayes, with the assistance of his son, C. E. Hayes, from Dingee and Henshaw.

The findings of the court were not entirely in accordance with these allegations. The findings are that Dingee and Henshaw gave to C. E. Hayes the option of purchasing from them one hundred of said bonds with the accompanying stock of twenty shares per bond, at the rate of one thousand dollars for each bond and the accompanying shares, and of reselling the bonds and stock, separately or together, for his own account, on such terms as he saw fit, and that at the time

of the purchases aforesaid C. E. Hayes bought the bonds and stock of Dingee and Henshaw and resold the *bonds* to Thomas R. Hayes at the price of one thousand dollars for each bond, the same being paid for with money of Main; that upon the said purchases, at the direction of C. E. Hayes, certificates Nos. 78, 79, and 84, aforesaid, were issued to Thomas R. Hayes and certificates Nos. 80, 85, and 170, aforesaid, were issued to C. E. Hayes, and that the certificates so issued to Thomas R. Hayes were delivered by Dingee and Henshaw to C. E. Hayes. It is further found that Thomas R. Hayes used the moneys of Main in purchasing the bonds from C. E. Hayes but did not use Main's money in purchasing or paying for any of the shares of stock, except that the said certificates for such stock were issued at the direction of C. E. Hayes upon the purchase of the bonds by C. E. Hayes from Dingee and Henshaw; that Thomas R. Hayes, in purchasing the bonds, did not use the services of C. E. Hayes otherwise than as above stated. This, it must be conceded, is rather obscure. But as a finding must be construed so as to support the judgment, if reasonably possible, the meaning, in effect, is that C. E. Hayes bought the bonds and stock for his own account from Dingee and Henshaw, that he resold them to Thomas R. Hayes for Main, giving as a bonus therefor only three hundred shares of stock instead of the six hundred shares as claimed in the complaint. There is no evidence other than the bare record of the transactions to show any knowledge on the part of C. E. Hayes of the failure of Thomas R. Hayes to inform Main of the stock bonus, or that he knew that Main had not directed Thomas R. Hayes to buy the bonds alone and refuse to accept the stock. It may be added that there is no allegation that C. E. Hayes had knowledge of these two matters. Fair dealing is presumed in the absence of knowledge or notice to the contrary, and C. E. Hayes, therefore, had the right to proceed on the assumption that Main did not want to take the stock, and on that theory he had the right to offer all or a part of such stock to his father. The court also found that Main had no previous knowledge whatever of the purchase of any of these bonds except the last lot of five, and that he had no knowledge at all of the fact that there was a stock bonus offered or given with the bonds. As to certificate 78 issued to Thomas R. Hayes, the court found that after this action was begun it was sold and transferred to said

James B. Smith, and that he paid a valuable consideration and took said one hundred shares without notice of the rights of Main therein, or of the facts above stated.

The judgment of the court below was in favor of the plaintiffs with regard to the certificates Nos. 79 and 84, aforesaid, and in favor of the defendants for the other shares of stock in controversy. The Standard Portland Cement Company was directed to issue to the plaintiffs out of the stock in question a new certificate for two hundred shares of its stock. The court was of the opinion that the sale of one hundred shares represented by certificate 78, by Thomas R. Hayes to James B. Smith, a cross-defendant, after the suit was begun, put that stock out of its power and beyond the reach of the plaintiffs because of the fact that Smith was a purchaser for value without notice of the plaintiffs' equities. It therefore refused to give plaintiff any relief on account of those shares. As to the three certificates for three hundred shares issued to C. E. Hayes as aforesaid, the theory, as we understand it, is that said Hayes was not chargeable with any trust in favor of the plaintiffs with respect thereto, but held the same as his own property in virtue of the transactions by which he acquired them.

We are satisfied that the court was correct in its conclusion that Thomas R. Hayes was chargeable as an involuntary trustee for the benefit of Main of the three hundred shares of stock issued to him. He could not use or deal with Main's money for his own profit, nor, without the consent of Main made after full disclosure by him to Main of all the facts affecting the transaction, take part therein in order to obtain an interest beneficial to himself, or without immediately informing Main of that fact. His conduct constituted a fraud against Main, and he was accountable in equity for everything gained by himself in the transactions. (Civ. Code, secs. 2224, 2229, 2230, 2233, 2234, 2237, 2243.) In view of the findings with respect to these three hundred shares, we must assume that the court believed that Thomas R. Hayes obtained the stock by purchasing the bonds, that he concealed that fact from Main and availed himself of the opportunity of buying the bonds with the purpose of benefiting himself by taking the stock in his own name. It is immaterial whether they were given to him by his son or obtained through the form of a purchase with the bonds. In either case he was bound to give the benefit to his principal, and he cannot be

allowed to hold such property against the demand of his principal for a restitution. The rights of Smith as an innocent purchaser of one hundred shares will be considered later.

The main contention of the plaintiffs upon their appeal is that the court erred in holding that C. E. Hayes took the stock issued to him free from any charge as involuntary trustee thereof in favor of Main. It is also claimed that the court should have held that Thomas R. Hayes, as successor in interest of his son, and because he was the original wrongdoer, took the same by the bequest from his son subject to the claims of Main, which thereupon reattached to the stock.

The theory of the plaintiffs is that C. E. Hayes was buying these bonds from Dingee and Henshaw for Main at the request of Thomas R. Hayes, and that in so doing he was the agent of the latter and, of course, a subagent for Main; in which case he also would be chargeable as trustee and would be obliged to account for and render up to Main, or his successors, all benefits received by him in the transaction. (Civ. Code, secs. 2229, 2230, 2237, 2243.) The evidence which it is claimed establishes such subagency on the part of C. E. Hayes is altogether circumstantial, consisting of inferences from the facts shown and admitted to be true and which are claimed to be necessary inferences therefrom. The rule is too well settled to require citation of authority that where the facts established may reasonably authorize opposite inferences and the trial court has adopted one and rejected the other, its decision is binding upon this court upon appeal, the case being in substance the same as that where it decides upon the weight of contradictory evidence. We are not disposed to say that if the trial court had found from the facts established that C. E. Hayes was merely acting as intermediary of Thomas R. Hayes for the purpose of buying for Main from the Cement Company or from Dingee and Henshaw the bonds in question, such decision would not be supported by the reasonable inferences deducible from the facts proven. But the facts also authorize the opposite inference, that is to say, that C. E. Hayes was disposing of his own property and rights and was acting wholly on his own account and for his own advantage in making the sale of the bonds to Thomas R. Hayes, and that no trust relation, either express or implied, existed between him and Thomas R. Hayes or Charles Main. Dingee and Henshaw had given him the option or privilege

of selling the bonds and stock of the company for his own
account, the sole condition being that he must pay the full
price of one thousand dollars for each bond and the corre-
sponding stock sold as a bonus therewith. Whether a bind-
ing contract or not, the effect is the same, for they recognized
its obligation and carried it out. Under this arrangement he
was himself, in legal contemplation, the owner of the stock
and bonds which he undertook to sell. He was under no obli-
gation to disclose either to his father or to Charles Main the
conditions upon which he was authorized to sell the bonds, nor
the benefits which could be derived therefrom, or, if he did
disclose to his father the fact that he was to receive a stock
bonus with each bond, he was under no obligation, in equity
and good conscience, to offer both to his father for Main,
even if he did have knowledge that his father was investing
the money of Main. He was at liberty to offer his father the
bonds at the par value and at the same time state his intention
to keep the stock for himself. If his father was content with
the price, C. E. Hayes was under no obligation to object or to
call attention to the fact that it was his father's duty to in-
sist upon receiving the stock also. The offer and acceptance
created no trust relation between C. E. Hayes and his father
and would not make the former the agent of the latter or of
Main. There is no evidence that C. E. Hayes was aware of
the fact that his father had not fully informed Main of the
conditions upon which the bonds were sold and had not re-
ceived from Main instructions to buy the bonds without the
stock. The relation of C. E. Hayes to the parties did not
make it his duty to inquire concerning these facts. He had
the right to rely upon the presumption that his father was
acting honestly and in good faith toward his principal. The
enterprise of the Standard Portland Cement Company was at
that time in its beginning. The value of the stock was then
largely prospective, and it was not unreasonable to suppose
that it had no appreciable value. Neither the evidence nor
the allegations show that it then had any value. It is not
unusual for such stock to become more of a liability than an
asset to the holder. Under such circumstances it was not
unreasonable for C. E. Hayes to suppose, if the question had
been suggested to him, that Main preferred to take the bonds
without any stock. All these inferences might have been
made by the court below from the facts with as much reason

as the opposite inferences contended for by the plaintiffs. Under these circumstances we are not disposed to disturb the finding of the court that C. E. Hayes took this stock as his own without any obligation to account therefor as either a voluntary or involuntary trustee for Main.

There is no merit in the claim that the relation of father and son, of itself, operated to create a confidential relation between the son and Main, so as to charge the son as an involuntary trustee for Main of the stock issued to himself. The relation of father and son is, by the rules of equity jurisprudence, deemed confidential. So also is the relation of principal and agent, and each party to one of these relations is bound to the utmost good faith with the other party in that relation. But we are unaware of any principle of law or equity to the effect that in one such relation the duty of one party to the other extends to a third person dealing with one of them as to whom he occupies a different relation, as, for example, that where a father is agent for a stranger, his parental relation makes all his children fiduciaries to the stranger. No authority is cited for the proposition, and we are unable to discover any principle or sound reason on which to found such an extension of the law of confidential relations, or on which to hold that the duty of a father as agent of a stranger is obligatory upon each of his children. On the contrary, we think it must be admitted that his children, in dealing with him concerning the subject of his trust, occupy the same independent position as other third persons, and are no more required to insist upon a faithful performance of his fiduciary obligations by the father, or to inquire as to the fact of such faithful performance, than would any other person having such dealings. If it was a fact, as the court may have inferred, that C. E. Hayes sold the bonds to Main, through the agency of his father, in the belief that Main desired the bonds alone without the stock, C. E. Hayes was not chargeable with any trust in regard to the stock toward Main and could dispose of it as he saw fit when the transaction was made. If thereupon he chose to keep some of the shares for himself and have others issued to his father, no involuntary trust would arise as to him with regard to the shares which he thus kept. If the son, upon selling the bonds, occupied a position which would authorize him justly to retain the stock as his own, as we must assume the court below believed, he was at

liberty, upon making such sale, to give a part of the stock to his father, if he chose, and the fact that he did so does not, of necessity, raise an inference that he had knowledge of bad faith on the part of his father in accepting the offer of the bonds alone for Main. Perhaps the court below might better have made such inference from the bare facts shown, but we cannot say, as matter of law, it was bound to do so or that the contrary inference was beyond the limits of reason. The argument for the plaintiffs in some of its aspects appears to assume that C. E. Hayes was making a general offer to all persons to sell the stock with the bonds for a fixed price per bond and that he was under some obligation to hold out this opportunity to purchasers from him. This, however, as we have seen, was not a necessary inference, and we must assume that the court did not so hold.

The plaintiffs, in their reply brief, claim that while it may be true that C. E. Hayes had a perfect title to the stock free from any charge in favor of Main, nevertheless when the property devolved upon Thomas R. Hayes in virtue of the bequest to him from C. E. Hayes, it immediately became charged with a trust in favor of Main because of the previous bad faith of Thomas R. Hayes in purchasing the bonds without the stock and allowing his son to take the same in his own name. There is authority for this proposition, although none is cited by the plaintiffs. Mr. Perry, on this subject, says: "But if the property comes back into the hands of the original trustee, or into the hands of any one affected with the guilt of the original sale, he will be a trustee for the defrauded party, although the property may have passed through several innocent hands." (1 Perry on Trusts, sec. 222; Ibid., sec. 830; see, also, 20 Cyc. 654; *Church* v. *Ruland,* 64 Pa. St. 432, 444; *Kennedy* v. *Daly,* 1 Schoales & L. (Ir. Ch.) 379; *Bourquin* v. *Bourquin,* 120 Ga. 115, [47 S. E. 639]; *Ely* v. *Wilcox,* 26 Wis. 91; *Williams* v. *Williams,* 118 Mich. 477, [76 N. W. 1039]; *Bovey* v. *Smith,* 2 Ch. Cas. 124, [1 Vern. 60, 85].) The difficulty with the proposition is that the only foundation which is laid for it in the pleadings is destroyed by the findings, which, as we have seen, are supported by sufficient evidence. The sole theory upon which the complaint charges an involuntary trust with respect to the three hundred shares issued to C. E. Hayes is that they were purchased with the bonds by Thomas R. Hayes, through

the medium of C. E. Hayes, that is, with his assistance as subagent, from Dingee and Henshaw, and paid for with the money of Main, of which latter fact C. E. Hayes had knowledge. The court found that the bonds and stock were not purchased by Thomas R. Hayes from Dingee and Henshaw, but that the bonds were purchased by Thomas R. Hayes from C. E. Hayes with, at most, only three hundred shares of stock as a bonus. It is not alleged that Thomas R. Hayes knew that Dingee and Henshaw were offering bonds with a twenty share bonus, or knew that they had bonds or stock for sale at all, or that he had information to the effect that he could have procured for Main twenty shares of stock for each bond he bought, or any greater number of shares than the three hundred which he took in his own name, or that with reasonable diligence he would have discovered these facts, or that by his negligence he failed to make such discovery. Consequently, no fraud or involuntary trust based on these facts, or any of them, can be adjudged against the defendants under this complaint. The involuntary trust alleged as to these shares is predicated wholly on the use of Main's money to buy them, and this charge is disposed of by the findings to the effect that this stock was not bought with Main's money, that only the other three hundred shares were offered to or bought by Thomas R. Hayes, and that these three hundred shares were rightfully and properly retained by C. E. Hayes as his own profit upon his resale. As to them, under the pleadings and findings, there was no trust in favor of Main.

James B. Smith had purchased the one hundred shares of stock represented by certificate 78 before he was made a party to the action. He paid full value and took the stock without actual notice of the facts upon which the plaintiffs base their claim, or of the pendency of the action. It is claimed by the plaintiffs that a purchaser of such property, pending an action in equity to recover it as the subject of a trust in the hands of a defendant, is charged with constructive notice of the facts asserted in the complaint and takes subject to the judgment finally rendered in the action. The general rule has been said to be that "every man is presumed to be attentive to what passes in the courts of justice of the state or sovereignty where he resides and therefore a purchase made of property actually in litigation *pendente lite* for a valuable consideration, and without any express or im-

plied notice in point of fact, affects the purchaser in the same manner as if he had such notice; he will accordingly be bound by the judgment or decree in the suit.'' (1 Story's Equity Jurisprudence, sec. 405, quoted with approval in *Sampson* v. *Ohleyer*, 22 Cal. 200, 210.) The case cited was an action for the possession of land. At that time the Practice Act (section 27), providing for the filing of a *lis pendens* notice, applied only in actions affecting the title to real property and was not applicable in cases for the mere possession. (*Wattson* v. *Dowling*, 26 Cal. 124.) It was said that this statute did not otherwise change the law on the subject and that the purchaser pending an action for possession, only, might be bound, although no *lis pendens* notice had been filed. But the case was decided on the ground that the purchaser had actual notice. The statute has since been changed, so that the right to file a notice of the pendency of an action extends to actions for possession of real property as well as to those affecting the title thereto. (Code Civ. Proc., sec. 409.) The question whether or not the doctrine of *lis pendens* applies to actions to reach specific personal property has not heretofore been decided or considered by this court, so far as we are advised. Section 409 is limited in its application to cases affecting real property. It appears to be the established rule that where a *lis pendens* statute has no negative words or repealing clause, it is to be "regarded as supplemental to the common law and not as repealing it, so that the common law will govern in all cases not covered by the statute." (25 Cyc. 1453.) On the question whether or not the common-law doctrine of *lis pendens* applies to actions involving specific personal property the authorities are in conflict. (21 Am. & Eng. Ency. of Law, 626.) In England, in *Wigram* v. *Buckley*, L. R. [1894] 3 Ch. Div. 483, the court, after careful consideration, decided that it did not apply to purchases of personal property *pendente lite* from a party to the action. In Cyclopedia of Law and Procedure (25 Cyc. 1453), it is stated that the prevailing rule is that it does apply in purchases of personal property. But an examination of the cases cited shows that few of them are well considered and several have been questioned in subsequent cases. We think it has been generally supposed that in this state the doctrine applies only to real property. It is said in *Sampson* v. *Ohleyer*, 22 Cal. 200, that even in cases of suits affecting real property,

prior to the enactment of any law for the recording of any *lis pendens* notice, the rule sometimes operated as a hardship upon parties who had no actual notice. The provision for the recording of notice was doubtless intended to prevent such injustice. It is apparent that the injustice would be much greater and of more frequent occurrence if the doctrine were extended to specific personal property, the possession or evidence of title whereof may be passed from hand to hand without public or written evidence of its transfer. In *Page* v. *W. W. Chase Co.*, 145 Cal. 578, 581, [79 Pac. 278], the court said: ''The rule of the common law that a purchaser *pendente lite* of the subject of the controversy took as a volunteer or intruder and in subordination to the judgment thereafter rendered in the action, is not in force in this state. . . . The provision in section 1908 (subdivision 2) of the Code of Civil Procedure, that a judgment is conclusive with respect to the matter directly adjudged between the parties and their successors in interest by title subsequent to the commencement of the action, is by the concluding clause of the section applicable only to those cases where the parties have had 'notice, actual or constructive, of the pendency of the action or proceeding.' '' This, of course, cannot refer to the constructive notice which at common law was imputed to all persons from the fact that an action was begun, for if that was its meaning, the proviso would be without any force whatever as to actual notice, since the action would always be constructive notice and all persons would be concluded whether they had actual notice or not. It must refer to constructive notice arising from some other fact than that of the pendency of the action. The provision applies to all classes of actions other than those described in subdivision 1 of the section. It therefore excludes the common-law doctrine that the pendency of an action is itself constructive notice to all. This is the basis of the rule that purchasers *pendente lite* are charged with notice and take subject to the judgment. The effect of this section, therefore, is to abolish the common-law rule, except in so far as it is preserved by section 409 of the Code of Civil Procedure. That section applies only to actions concerning real property. The result is that in this state the doctrine does not apply to personal property in actions of this character.

The plaintiffs invoke the doctrine that the vendor of personal property can transfer no better title than he himself

possesses, as against the true owner, unless an estoppel exists against such owner. Here, however, the facts show an estoppel against Main. He placed his money in the possession and control of Hayes, who thereupon used it to buy these bonds, and so was enabled to procure the stock in his own name without anything on the face of the certificate to identify it as the property of Main. Main in this manner permitted Hayes to clothe himself with all the evidences of ownership of the stock and enabled him to represent to third persons that he was the absolute owner thereof. He is therefore estopped to claim title against one who has purchased and paid for the stock in good faith, relying upon the apparent ownership which the conduct of Main thus made possible. The case comes within the principle stated in *Fowles* v. *National Bank*, 167 Cal. 653, 656, [140 Pac. 271], and *Thompson* v. *Toland*, 48 Cal. 99, 112.

The plaintiffs further urge that inasmuch as it appears that there is other stock of the Cement Company belonging to the estate of Hayes, sufficient to replace the shares sold to Smith, and of like kind, the court should have directed a transfer to plaintiffs of one hundred shares thereof. The argument is that the identity of the shares, in such a case, is immaterial if substantial restitution can be made out of other property of the same kind belonging to the wrongdoer. (*Bell* v. *Bank of California*, 153 Cal. 234, 239, [94 Pac. 889]; *Atkins* v. *Gamble*, 42 Cal. 86, 101, [10 Am. Rep. 282]; *Krouse* v. *Woodward*, 110 Cal. 638, 643, [42 Pac. 1084].) The answer to the argument is found in the cases cited in support of it. (*Bell* v. *Bank of California, supra; Krouse* v. *Woodward, supra.*) The court, in *Bell* v. *Bank of California, supra*, says that where one is seeking to enforce an involuntary trust of this character by a transfer from the trustee to him of similar property in lieu of that which has passed out of the control of the trustee, he "must allege and show that the defendant is in a position to make such delivery." The complaint contains no allegation of this character and no such issue is embraced in the pleadings. It is true that the findings do show that the three hundred shares issued to C. E. Hayes belong to the estate of Thomas R. Hayes. But the point that one hundred of those shares might be substituted for those sold to Smith was not made in the court below, nor in this court except in the reply brief. It may be that if the point had

been presented in the lower court, the defendant, Hayes, could have shown good cause for denying the relief. Under these circumstances we will not change the judgment in this particular.

The refusal of the court to allow evidence that Thomas R. Hayes, by pledging the bonds of Main in his possession, obtained the money wherewith he purchased five of the ten bonds sold him on October 4, 1902, resulting in the issuance of certificate 85, or to allow an amendment of the complaint alleging that fact, is assigned as error. The evidence did not correspond to the allegations of the complaint at that time, and it was properly rejected for that reason. The true question, therefore, is whether or not the court erred in refusing leave to amend. Such an amendment would have raised new issues. It was not sought until the second trial, seven years after the first appeal was decided, a decision containing a suggestion that the complaint be amended, and after at least two amendments thereto had been made relating to the stock. The lack of diligence in offering to amend is obvious. Nothing was shown in excuse. It was a matter within the discretion of the court, and we perceive no abuse of discretion.

The appeals of Young and the Standard Portland Cement Company are presented together. The points urged in support thereof are (1) that it was error to direct Young to surrender for cancellation and transfer to the plaintiffs his certificate of stock in the Cement Company, representing the two hundred shares adjudged to plaintiffs by the judgment, and (2) that it was error to give judgment against the Cement Company for the dividends declared on the stock up to April 15, 1907. In explanation it will be necessary to state some additional facts.

After the action was begun the stockholders of the Cement Company, not including plaintiffs, organized a new corporation, named Standard Portland Cement Corporation, with a capital stock of four million dollars, divided into forty thousand shares of one hundred dollars each. It was arranged that the capital stock of the "corporation" should be issued to L. F. Young, that the "company" should transfer all of its property and business to said "corporation," that the stockholders of the "company" should then surrender their shares in the "company" to Young in exchange for stock

in the "corporation," at the rate of one share in the "company" for two shares in the "corporation." In this manner the "corporation" would take over the property and business of the "company" and the stockholders of the latter would receive in exchange for each share of that stock double the number of shares in the stock of the "corporation." This arrangement was carried out on April 19, 1907, and thereupon the "corporation" succeeded to the property and business of the "company." Plaintiffs did not consent to the arrangement and there was no consideration for the respective exchanges of property and stock except as above stated. The defendant Hayes surrendered the two certificates 79 and 84 and new certificates for the two hundred shares were issued, one to Frank A. Losh and the other to L. F. Young. Neither paid value for the transfer. Losh had notice of plaintiffs' claims at the time, but Young did not. According to the findings, by various surrenders and transfers of the stock represented by the aforesaid certificates 79 and 84, it came about that the shares represented thereby were all transferred on the books of the company to L. F. Young in pursuance of the arrangement for the exchange of stock aforesaid and he still holds the same in his name. In lieu thereof there were transferred by him to Frank A. Losh and Mary E. Hayes, respectively, two hundred shares each of stock in the said "corporation." This was done in the carrying out of the arrangement above mentioned. Young was not a *bona fide* holder or purchaser for a valuable consideration of any of said shares. They were transferred to him for the purpose of effecting the exchange of stock mentioned. All the other parties except Young had full notice of the claims of the plaintiffs and of Charles Main against the said stock.

At the time the action was begun, May 29, 1904, no dividends on the stock had been declared. The plaintiffs, in addition to the specific prayer, asked for general relief but did not mention dividends. On October 27, 1909, a supplemental complaint was filed alleging that up to April 15, 1907, the Cement Company had declared dividends on its stock amounting to the sum of $16.75 upon each share, and that after that time, the property and business of the company having been in the meantime transferred to the new corporation under the name of the Standard Portland Ce-

ment Corporation, additional dividends had been declared up to October 15, 1907, on account whereof plaintiffs would be entitled to seven thousand two hundred dollars in respect of the two hundred shares of the company decreed to them by the judgment; that on August 31, 1909, plaintiffs had demanded payment of said dividends, which was refused, and praying judgment for the amount thereof against the defendant company. The court gave judgment in favor of the plaintiffs for $4,474.30 against the company on account of the dividends up to April 15, 1907, and accrued interest. It refused to allow judgment for the dividends declared by said "corporation."

A corporation is created and given a legal existence in order that it may, in its legal capacity, hold and manage the property transferred and business committed to it by its stockholders. They are the beneficial owners of the corporate property. The corporation is their agency and holds the property for their benefit and in trust for them. The interest of each stockholder in the property is the proportion which his shares of stock bear to all the stock outstanding. The certificates are not property in the real sense, but are merely evidences of the undivided interests of the several stockholders in the corporate assets and business. The transactions above set forth, being without valuable consideration and with full notice to all the parties concerned of the claims of the plaintiffs and of the pendency of the action, did not change the relative rights of the parties, so far as the plaintiffs are concerned, nor in any manner affect their rights or the power of the court, by its judgment, to give the plaintiffs all relief appropriate to the form of the action and to enforce its judgment by suitable legal process against all the parties. The titles so obtained by third persons not parties to the action, being taken subsequent to the commencement of the action, are subject to any judgment regularly given therein. (Code Civ. Proc., sec. 1908, subd. 2.) Notwithstanding the subsequent dealings mentioned, these parties each stand charged with notice of plaintiffs' claims and hold the shares and property received by them, respectively, charged with the trust alleged and found to exist in favor of the plaintiffs, and with the same liability and obligation to account to plaintiffs for said shares and the proceeds thereof as did the original parties to the action. (Civ. Code, sec. 2243.) With re-

spect to making transfers of its stock, as between opposing claimants thereof, the corporation occupies the position of an agent or trustee of both and is bound to the exercise of good faith. Upon the beginning of the action, the defendant corporation was bound at its peril to preserve the property in *statu quo,* so far as should be necessary to protect the rights claimed by plaintiffs and to keep the stock subject to the power of the court. (*Cooper* v. *Spring Valley Water Co.,* 171 Cal. 158, 162, [153 Pac. 936] ; 26 Am. & Eng. Ency. of Law, 888; Civ. Code, sec. 2237.) It was not authorized to transfer the shares on its books to a new party, or in any manner hinder or delay the plaintiffs, unless by their consent, or under permission of the court. (Civ. Code, secs. 2230, 2232, 2237.) The fact that it was not enjoined from so doing by an interlocutory order would exempt it from a charge of contempt of court therefor, but would not affect its liability to the plaintiffs on account thereof nor the power of the court to give relief against it in the final judgment.

So far as the defendant Young is concerned, he holds the stock as a naked trustee, having no beneficial interest therein, and his claim that the judgment is erroneous, in so far as it requires him to surrender the same and permit the issuance of the proper number of shares to plaintiffs, is wholly without merit.

In their briefs counsel for the defendant say that the defendant company could not determine which of the contending claimants to the stock was entitled to the dividends. This is true, but it does not follow that it was therefore free to pay the dividends to the record holders of the stock, or to transfer such stock upon the order of such record holders, without regard to or responsibility for the rights of plaintiffs therein. The troubles of the defendant company arise from the fact that it did assume the power which its counsel say it did not possess, the power to decide between the contenders. Its dividends were owing to the true owners of the shares. In paying them to the record holders of the stock claimed by plaintiffs, it decided that such holders were the true owners and that plaintiffs had no interest therein. It made a like decision when it transferred the stock on the orders of such record holders. It cannot be allowed to obtain any benefit or advantage from these erroneous and unauthorized decisions. The transferees with notice stand in like position

and must respond to the judgment of the court, so far as it applies to them.

It is urged on behalf of the defendant company that the transfer of these shares in the manner directed by the judgment cannot be allowed, unless the aforesaid ''corporation'' is brought in so that it can be bound by the judgment. It is pointed out that four hundred of the shares of said ''corporation'' have been exchanged for the plaintiffs' two hundred shares in the Cement Company, standing in the names of Losh and Hayes, that this constitutes a valuable consideration given by the ''corporation,'' that the two hundred shares so received and exchanged for the four hundred ''corporation'' shares are the property of the ''corporation,'' and are held by Young as its agent and trustee, wherefore it would be erroneous to compel the ''company'' to issue new certificates to the plaintiffs, unless the ''corporation'' is made a party so as to be bound to make the same good to the ''company'' out of the shares so held by Young. There are two answers to this contention. In the first place, the entire transaction and exchange was a mere form. The ''corporation,'' without consideration, received the property belonging to the ''company,'' the property in which the plaintiffs had an equitable interest to the extent of the two hundred shares.

Upon this property it issued its capital stock and offered the same to the persons holding stock in the ''company'' at the rate of two for one, they being the persons owning the beneficial interest in the property. All this was done with notice by the officers of the ''corporation'' of the pendency of the action and of the rights of the plaintiffs. Under section 1908 of the Code of Civil Procedure the judgment is conclusive against the ''corporation,'' upon the facts found by the court, whether it is a party to the judgment or not. The ''company'' having brought about the formation of this ''corporation'' and the exchange of shares, must look out for itself with respect to the consequences which may ensue because of the complications thereby caused. It cannot throw that burden on the plaintiffs. In the second place, the court below, during the pendency of the action and before the trial was closed, made an order directing the defendant company to file a cross-complaint, bringing in as parties ''all persons and corporations who are now holders of any certificate or certificates, or any shares of stock in said Standard Portland

Cement Company, the title to which is derived from Thomas R. Hayes under and by means of the transfer of certificates 78, 79, and .84, of said Standard Portland Cement Company, subsequent to the commencement of this action." Long before that time the aforesaid arrangement for the transfer of property and exchange of stock had been made and carried out, and the said "corporation" had acquired whatever interest it now has in the stock of the defendant company. In partial compliance with this order the defendant company filed a cross-complaint, naming as additional parties to the action James B. Smith, Frank A. Losh, and L. F. Young, but failing to name the said "corporation" as a party, or to state anything whatever concerning the issuance of shares by the "corporation," the transfer of property and business to said "corporation," or the fact that it had an interest in the stock in question. Under these circumstances it does not lie in the mouth of the defendant company to say that the judgment is erroneous because of the fact that the "corporation" was not made a party to the action.

It may be true, as argued by defendants, that four hundred shares of the stock of said "corporation" in equity belongs to plaintiffs and that the court, upon the facts found, might have given judgment accordingly. The plaintiffs did not ask such relief, so far as appears. They were not bound to follow the property that far. It is true that the two hundred shares in defendant company, adjudged to plaintiffs, are held by Young in trust for said "corporation," so far as their rights as between themselves are concerned, said two hundred shares having been received by him in exchange for four hundred shares of stock in the "corporation" which have been transferred and certificates therefor delivered to Losh and Mary E. Hayes, respectively. This is no cause for reversal in favor of defendants. The said "corporation," being in fact a volunteer with notice of the pendency of the action, is bound by the judgment as rendered. Neither it nor the defendants are wronged thereby. It might have been cause for a modification of the judgment in favor of plaintiffs by a direction that said Losh and Hayes, respectively, deliver to plaintiffs said shares in the "corporation," had they asked it. But they are apparently content to allow the judgment to remain as it is on that point.

The cause of action for dividends is not barred by the statute of limitations. It did not begin to run until a demand was made therefor. (*Bills* v. *Silver King M. Co.*, 106 Cal. 9, 21, [39 Pac. 43]; *Ralston* v. *Bank of California*, 112 Cal. 208, 215, [44 Pac. 476].) To the claim that the demand was unreasonably delayed, the answer is that plaintiffs were not required to make a demand unless they knew, or had good reason to believe, that dividends had been declared. We are not cited to anything in the record indicating that there was any unreasonable delay in making the demand, and therefore we cannot hold the conclusion of the trial court on this subject to be without sufficient support in the evidence.

There are no other points that require discussion.

The judgment and orders denying a new trial are affirmed.

Sloss, J., and Lawlor, J., concurred.

Hearing in Bank denied.