[No. 12069. In Bank. — May 3, 1890.]

CHARLES ASHTON, Appellant, v. DASHAWAY ASSOCIATION et al., Respondents.

84 61
96 79

84 61
126 73

Corporations — Benevolent Association — Division of Corporate Funds — Departure from Charter — Action by Member. — A benevolent association, incorporated to promote the cause of temperance, and not for pecuniary profit, cannot divide any part of the corporate property or funds among its members; and any member of such association may maintain an action to prevent or set aside such a plain misappropriation of the corporate funds. Every stockholder or member of a corporation has the right to sue in equity to prevent any departure from the chartered purposes of a corporation by the action of the majority.

Id. — Demand upon Trustees — Useless Act. — While it is the general rule that a member or stockholder of a corporation cannot have redress for any wrong or injury to the corporation until he has made an earnest effort to secure proper action by the managing body of the corporation, yet where it appears that it would be futile and useless to make a demand upon the corporation, or upon its trustees or officers, to commence a suit to obtain relief, or that the trustees are parties to the transaction complained of, and claim the right to do what they did, no such demand need be made.

Appeal from an order of the Superior Court of the city and county of San Francisco denying a new trial.

The facts are stated in the opinion of the court.

*S. Heydenfeldt, Jr.*, and *Joseph P. Kelly*, for Appellant.

*Tilden & Tilden*, and *David McClure*, for Respondents.

Sharpstein, J. — This appeal was heard in Department Two, which reversed the judgment and order of the court below. An opinion was filed November 22, 1889. Afterward a petition that the cause be heard in Bank was filed and granted, and the case has been argued in Bank, but the argument has failed to convince us that the decision of the Department was erroneous; and for the reasons stated in the opinion of the Department, the judgment and order appealed from are reversed.

Works, J., Thornton, J., and Paterson, J., concurred.

The following is the opinion of Department Two, above referred to, rendered on the 22d of November, 1889:—

SHARPSTEIN, J.— This was a suit by Charles Ashton, a member of the Dashaway Association, against the corporation, its five trustees and a majority of the other members, to compel the restoration of funds alleged to have been misappropriated. The trial court nonsuited the plaintiff, who appeals from an order denying his motion for a new trial.

The original association was an incorporated temperance society. It was formed in January, 1859, at the Howard engine-house, by seventeen public-spirited men, who took a pledge to abstain from all intoxicating drinks except for medical purposes, the necessity of which was to be certified by a physician, and adopted a constitution and by-laws. The initiation fee was fixed at twenty-five cents, and the dues at twelve and a half cents a week. The preamble was as follows:—

"We, the undersigned, anxious to advance our own interests, and to promote a spirit of good feeling, not only amongst ourselves, but our friends, and being impressed with the importance of concentrated effort to accomplish the object, and desirous of forming ourselves into an association, in which we may labor together for the end proposed, have framed the annexed constitution," etc.

It was provided that "it shall be the duty of members to seek out their friends in the city and vicinity, and bring them to the meetings and introduce them to the members," and "to assist those members who are in need to obtain employment, and aid and encourage the poor and needy as far as lay in their power."

The name adopted was the Dashaway Association,— the meaning of which is said to be that it was the object to encourage the members and their friends to "dash away" the intoxicating cup from their lips.

In May, 1859, a more extended constitution was adopted. After reciting that the original plans were "to bring under our banner all inebriates, not only here, but in other parts of the state," it provided for the establishment of branch associations, and that all persons admitted as members should take the pledge. The substance of the previous constitution was adopted.

The enterprise seems to have received the approbation and assistance of the public. The press gave it encouragement, the Rev. Thomas Starr King consented to deliver a lecture for its benefit; and donations of books, of building materials, and of money were received. On one occasion the association received a "donation in money" of $157.50; on another, a subscription of $1,200; on another, $2,107.83; on another, $134.50; on another, $154.75; and letters of sympathy were received from other states.

In 1860 the association purchased a lot on Post Street, near Dupont, for the sum of $6,250, and a building was erected upon it for the use of the association. This is the lot which was subsequently sold as mentioned below. It was mortgaged for part of the purchase-money, and subsequently other mortgages were placed upon it.

In 1862 the association was incorporated. The articles were evidently framed under the provisions of the incorporation of "religious, social, benevolent, and learned associations." (1 Hittell's General Laws, 1024 et seq.) There was no capital stock. The articles state that the organization was "a benevolent association formed for the purpose of promoting the cause of temperance." A "home" for the care of inebriates was provided under the auspices of the association; but for this purpose a separate corporation was formed.

The association had a numerous membership. "There were 3,163 names before the incorporation, and 4,964 since the incorporation." In 1882, however, from some cause, which is not explained by the record, the member-

ship had dwindled to fifty-nine. And in the following year notice was given of a meeting of members to consider the question of selling the property above mentioned in order to pay the indebtedness, "and to reinvest in other property suitable for the association." At this meeting a resolution was passed that the trustees be instructed to sell the property, pay the indebtedness, " and purchase other cheaper property suitable for the uses and purposes of the association." A petition for leave to sell the property was accordingly filed in the superior court, stating, among other things, that the association was incorporated " purely and solely for the benevolent and laudable purpose of aiding and promoting the cause of temperance, and not procuring profit." And the court granted leave to sell, reciting in its order the above-mentioned resolution.

The property was then sold for the sum of $156,000. Of this sum, $45,000 was used in discharging indebtedness, $31,543.54 was placed in savings banks, where it is to be presumed that it now is, and $73,500 was divided among forty-nine members, including the trustees. . The answers deny that the defendants "unlawfully or fraudulently" took or received any of the money, or that they took or received any money "that was held by said corporation in trust," but do not deny the taking or receiving, and the evidence of the taking is uncontradicted. At a meeting of the members held in December, 1883, the minute-book shows the following entry: "Brother Eagan then moved that the association *donate* to each member in good standing the sum of fifteen hundred dollars for past services, on signing a receipt for the same. Carried unanimously." And this is followed by a receipt in the following form:—

"San Francisco, Dec. 31, 1883.

"We, the undersigned, members of the Dashaway Association, hereby acknowledge the receipt of fifteen hundred dollars, donated to us for past services, by order of the association."

This receipt was signed by forty-nine members, including the trustees, the sum of fifteen hundred dollars being opposite each name.   It was admitted at the trial "that there were no services rendered by the defendant members other than in the line of being good and efficient members of the organization, in accordance with the constitution and by-laws and general objects of the association, and that that is all any of the defendants rendered to the society."

The by-laws provide that "no officer of this association shall receive compensation for his services, except the secretary and collector, who shall receive such compensation as may from time to time be fixed by the association."

It is admitted by the pleadings that the association "still is" a corporation; and no proceedings for its voluntary dissolution are shown.

The argument for the respondents is, that the organization was not a ·charity, in its legal sense, and that therefore it could do what it pleased with its property. " Take all the evidence," say the learned counsel, "search the record through and through, and not one word indicating a charity can be found."   We do not find it necessary to decide this question, and for the purposes of this opinion shall assume that the association stands upon the same footing as any other private corporation. So regarding it, we think it clear that any member has the right to the aid of the courts in preventing or setting aside such a plain misappropriation of the corporate funds as is above shown.   That any stockholder or member has this right in equity is well established. The rule is thus stated in a recent work: "Even the majority have no right to direct the affairs of a corporation, except in accordance with the provisions of its charter, for the powers of the majority are derived wholly from the agreement of the stockholders, as set out in the charter.   And every individual stockholder

has the right to stand upon his contract and forbid any departure from its terms. It may according be stated as a rule that any departure from the chartered purposes of a corporation is an injury to every individual stockholder, for which equity will, under proper circumstances, provide a remedy." (*Morawetz on Corporations*, sec. 403.)

Another learned writer says: "It is *ultra vires* and illegal for the board of directors to donate the funds of a corporation to charitable or public purposes, or to aid corporations of a similar character, however praiseworthy the purpose of the donation may be. Nor can the directors legally use the funds of the corporation to induce promoters to abandon a proposed rival company. A stockholder may enjoin the directors from making free of tolls a bridge from which a corporation derives its income. The directors may be held liable for allowing the president to use the corporate funds for lobbying purposes. An unreasonable use of the corporate funds of a leased railroad to build up and improve the lessor railroad, without reference to the rights of the former, has been held to be good cause of complaint on the part of a stockholder in the leased railroad company. And in general, any misapplication or waste of the property of a corporation may be remedied by a member thereof." (*Cook on Stock and Stockholders*, sec. 674.)

The supreme court of Rhode Island, in reference to the misappropriation of corporate funds by a director, said: "The jurisdiction does not appear to be so firmly settled and defined in England as in this country; but we do not believe that any English judge has ever decided that a president or director who fraudulently converts or embezzles corporate funds cannot be sued in equity by a stockholder when the corporation willfully refuses or neglects to bring the suit. Indeed, to hold that a corporation could gratuitously condone or release such a fraud by anything short of unanimous consent would be monstrous; for it would be in effect to hold

that a president or director who can control a majority in the corporation may rob or despoil it with impunity." (*Hazard* v. *Durant*, 11 R. I. 206, 207.)

In accordance with those principles, it has been held that a stockholder may restrain the directors from paying an unfounded claim of the secretary for extra services (*Butts* v. *Woods*, 37 N. Y. 317); and may compel the repayment of funds misappropriated by the directors (*Sears* v. *Hotchkiss*, 25 Conn. 177; 65 Am. Dec. 557); and may recover from a trustee property of the corporation which he has converted to his own use (*Carpenter* v. *Roberts*, 56 How. Pr. 216); and may prevent corporate securities from being misapplied to the benefit of other corporations (*Chicago* v. *Cameron*, 120 Ill. 447); and may have annulled a lease made in excess of corporate powers (*Mills* v. *Central R. R. Co.*, 41 N. J. Eq. 1); and may prevent the collection of payment of a tax illegally levied (*Dodge* v. *Woolsey*, 18 How. 331); and may prevent the payment of dividends out of a fund which ought to have been appropriated to repairs of the company's works (*Dent* v. *London Tramway Co.*, L. R. 16 Ch. Div. 344); and may prevent the conversion of the corporate assets by the officers (*Atlanta R. E. Co.* v. *Atlanta Bank*, 75 Ga. 45); and may have restrained acts which amount to a violation of trust or a breach of the charter (*March* v. *Eastern R. R. Co.*, 40 N. H. 458; 77 Am. Dec. 732; *Wilcox* v. *Bickell*, 11 Neb. 154; *Teachout* v. *Des Moines R. R. Co.*, 75 Iowa, 727; *Manderson* v. *Commercial Bank*, 28 Pa. St. 379); or which amount to a fraud upon the company (*Ryan* v. *L. A. & N. W. R. R. Co.*, 21 Kan. 365); or to a breach of its charter (Cook on Stock and Stockholders, sec. 672.)

In California the rule was laid down in *Wright* v. *Oroville M. Co.*, 40 Cal. 20, in which case it was held that a stockholder could compel the company to refund the sum paid by him for the redemption of corporate property which the directors had allowed to be sold, and had

wrongfully neglected to redeem, and Wallace, J., delivering the opinion, said: "It is settled that courts of equity in this country will, at the instance of a stockholder, control a corporation and its officers, and restrain them from doing acts even within the scope of corporate authority, if such acts when done would, under the particular circumstances, amount to a breach of the very trust upon which, as we have seen, the authority itself has been conferred. (*Dodge* v. *Woolsey*, 18 How. 341.) And upon the same principle the court will, even after such an act has been done, relieve an injured stockholder from loss, if in the mean time no superior equity has intervened, nor the rights of innocent third parties attached." (See also *Neall* v. *Hill*, 16 Cal. 145; 76 Am. Dec. 508; *Beach* v. *Cooper*, 72 Cal. 99; *Chicago* v. *Cameron*, 120 Ill. 458.)

And the relief does not depend upon the existence of a fraudulent intent, although such intent very frequently exists.

Now, in the present case, there was a plain misappropriation of corporate funds. The corporation was not dissolved, or, so far as appears, to be dissolved. It was a simple case of trustees who were in possession and in control of corporate funds, acting in pursuance of a vote of the majority of its members, "donating" the corporate funds to themselves and other members upon the pretext of "past services," although the fact was, as admitted at the trial, that no services had been rendered other than such as the parties were bound to render as members of the association.

The answers deny that the association was not a corporation for profit. But it is too plain for discussion that this denial was untrue. The corporation was not for profit. Its articles define it as "a benevolent association formed for the purpose of promoting the cause of temperance"; and it is evident, as stated in the petition for leave to sell the property, that the association "was incorporated purely and solely for the benevolent and

laudable purpose of aiding and promoting the cause of temperance, *and not pecuniary profit."* This being so, the division of more than one half of the corporate property among forty-nine members was a diversion of the same from the cause of temperance, which was the "benevolent and laudable" purpose of the institution, into the private pockets of said members. It was an attempt to make a profit out of an undertaking which was not for profit.

It is not inconsistent with the conclusion that the preamble of the constitution of the unincorporated association stated that the object of the members was "to advance our own interests." It is perfectly clear from the circumstances that this meant their interests with respect to temperance and sobriety. But aside from this, the old constitution was superseded by the articles of incorporation, which explicitly define the object of the association as above stated.

If such a transaction as appears here would be sanctioned, the majority of the members of any club, or social, religious, or benevolent society, could, without winding up the concern, divide up the funds whenever they felt in need of a little money.

It does not appear that the plaintiff consented to the proceeding. He is not shown to have been present at the meeting at which the resolution above quoted was "unanimously carried." His name does not appear on the receipt above set forth. The resolution offered by him at the meeting preliminary to the sale seems to us to have been perfectly proper. And his subsequent proceedings show, to his credit, that he was not a party to the transaction.

It is argued for the respondents, however, that a member or stockholder cannot have redress for any wrong or injury to the corporation "until after he has exhausted all the means within his reach to obtain redress of his

grievances; he must make an earnest effort with the managing body of the corporation."

This is undoubtedly the general rule. But the complaint alleges that the trustees of the corporation "control and manage its affairs, and were parties to the said unlawful and fraudulent acts, being aided and abetted by the said other defendants, members, and it would be futile and useless to make a demand upon said corporation defendant, or upon its trustees or officers, to commence a suit to obtain the relief which the plaintiff seeks, or any relief whatever." The answers deny that the trustees "were ever parties to any unlawful or fraudulent transaction," but do not deny the remainder of the allegation. And from the whole case it is apparent that the defendants claim the right to do what they did, and that the trustees were parties to the transaction. Under these circumstances, it was not necessary for the plaintiff to demand that they should take action. "The law does not require a useless act to be performed; and when it is claimed from the answer that if a demand had been made it would have been refused, it does not lie in the mouth of the defendant to object that no demand was made." (*Parrott* v. *Byers*, 40 Cal. 622, 623; see also *Heath* v. *Erie R. R.*, 8 Blatchf. 347; Morawetz on Corporations, sec. 395; 3 Pomeroy's Eq. Jur., sec. 1095.)

We see no material error in the admission of evidence. But if there had been, it would not affect the result here. (*McCloud* v. *O'Neall*, 16 Cal. 397.)

The order appealed from is reversed, and the cause is remanded for a new trial.

McFarland, J., and Thornton, J., concurred.