[S. F. No. 8725.  In Bank.—May 22, 1920.]

THE NEWELL-MURDOCH REALTY COMPANY (a Corporation), Respondent, v. JESSIE E. WICKHAM et al., Appellants.

[1] PRINCIPAL AND AGENT—EXCHANGE OF LAND—INTEREST OF AGENT—IGNORANCE OF PRINCIPAL—CONTRACT NOT ENFORCEABLE.—A contract for an exchange of real properties between a corporation and private persons cannot be specifically enforced at the instance of the former, where the latter were represented by a real estate firm which owned the majority of the stock of the corporation, and the firm failed to inform their principals in the transaction of such fact.

[2] ID.—DUTY OF AGENT—DISCLOSURE OF INTEREST.—Where an agent is employed by a vendor to negotiate a sale, and he is himself financially interested on the side of the vendee, by reason of a direct or indirect property interest, which he has or will have in the property when it is acquired by the vendee, or in the price to be paid by the vendee, he must disclose that interest fully to the principal, and the principal with full knowledge of all the facts known to the agent, bearing upon its advisability, and of such interest, must act freely and of his own volition in making the deal, and if the agent fails to make such disclosure, where the vendee is aware of such failure, the sale may be avoided at the option of the vendor.

[3] ID. — INTEREST AS STOCKHOLDER IN PURCHASER — DUTY TO DIS-CLOSE.—Interest of an agent as a stockholder in a corporation purchaser is such an interest as requires that the vendor be informed thereof.

[4] ID. — KNOWLEDGE OF EQUITIES OF VENDOR — CORPORATION PUR-CHASER.—Where a real estate firm authorized to negotiate an exchange of real estate are the managing officers of the other party to the exchange, and fail to inform their principals of such fact and of the interest of the firm in the corporation, the corporation is chargeable with full knowledge of the equities of the vendor, and the option to avoid the contract remains complete until an action for specific performance is commenced, and is then available as a defense thereto.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Bernard J. Flood, Judge. Reversed.

The facts are stated in the opinion of the court.

Ornbaun & Fraser, John W. Preston, Robert Duncan, Lovett K. Fraser and Abe P. Leach for Appellants.

Walter H. Linforth for Respondent.

SHAW, J.—The defendants appeal from a judgment directing the specific performance of an agreement to exchange real property, alleged to have been made between the plaintiff and the defendants.

.The complaint alleged, in substance, that the agreement to exchange real properties, which is set forth in full therein,

2. Validity of sale or transfer by agent to himself, notes, 80 Am. St. Rep. 557; Ann. Cas. 1912A, 1172.

was made between the parties on August 11, 1916; that it was fair and reasonable in its terms; that plaintiff had offered to perform, but that the defendants, although duly requested so to do, had refused to perform their part thereof. The property of plaintiff consisted of a number of lots in the Forest Hill tract in San Francisco. The property of the defendants, which it is claimed they agreed to exchange for said property of plaintiff, consisted of an improved corner lot at Jones and Jackson Streets in San Francisco.

We are of the opinion that the findings and judgment are contrary to and unsupported by the evidence upon certain points essential to the judgment. The question involved is the duty of the agent of the vendor to disclose to such vendor everything within his knowledge relating to the advisability of the sale of the property which the agent is employed to sell for the vendor and whether or not a sale can be enforced by the vendee against such vendor when the agent who makes the sale is himself interested with the vendee in accomplishing the same, but fails to fully inform the principal of such interest and the vendee had knowledge of such failure at the time.

During the time of the transactions under inquiry the Newell-Murdoch Realty Company was a corporation, having two thousand shares of stock outstanding, and the Newell-Murdoch Company was a partnership of which R. C. Newell and William C. Murdoch, Jr., were the only members. This partnership was also the owner of 1,050 shares of the stock of the Newell-Murdoch Realty Company, being a majority of the outstanding issue thereof. Newell was the president and Murdoch the secretary of the corporation, and under the resolutions and by-laws of the corporation they were in control of its affairs and were authorized to contract in its behalf for the purchase or sale of real estate. They were also the actual managers of the corporation and in control of its affairs. The three defendants were brother and sisters and owners in common of the Jackson and Jones Streets property. An agent of the firm of Newell-Murdoch Company proposed to them an even exchange of the Forest Hill lots for their property aforesaid. Because of this proposal, the defendants visited the office of the Newell-Murdoch Company in San Francisco on August 11, 1916, and there signed a proposal to make such exchange. Murdoch then

produced a blank form of agreement for exchange which they duly filled up and it was then signed by the defendants. This document in form was a proposal to be signed by one party to exchange the property, followed by a blank form of an acceptance of the proposal by the other party. The defendants signed the part constituting the proposal. It provided that ''the undersigned hereby authorize Newell-Murdoch Company to act as their agents in negotiating an exchange, and agree that if they shall secure an acceptance of the above proposition to exchange the above described property on the above terms,'' each party should furnish an abstract of title within ten days, and that the defendants should pay Newell-Murdoch Company $525 as commission for such services, and ''it is understood that said agent may also act as agent for the owners of the above secondly described property, from whom they may also receive a commission.'' The said agents were allowed four days within which to procure the acceptance of the proposal by the owners of the Forest Hill lots. This document, so signed, was delivered by the defendants to said Newell-Murdoch Company, as agents as aforesaid, about 4 o'clock in the afternoon of August 11th, at which time a carbon copy thereof was delivered by said agents to the defendants. The part of the document providing for the acceptance of the owners was not then signed or filled in. No consideration was paid or rendered at the time of this transaction. Upon reaching home the defendants decided not to carry out the contract, whereupon Jessie E. Wickham wrote and mailed a letter to the Newell-Murdoch Realty Company, stating that she could not sign any deed for her undivided interest in the Jackson Street property and ''hence we will consider the matter closed.'' All this occurred on a Saturday. The letter was received by Newell-Murdoch Realty Company early on the following Monday morning. The Newell-Murdoch Realty Company and the Newell-Murdoch Company were both managed and operated by Newell and Murdoch and the offices of the two concerns were in the same rooms. Immediately after the departure of the defendants from the office, Murdoch filled up the form for the proposed acceptance on behalf of the plaintiff and signed the same as secretary thereof. It was afterward signed by Newell as president, but whether before or after the receipt of the letter from Jessie E. Wickham revoking the agreement does not appear.

During the interview in which the proposal was made by the defendants they were not informed by Newell-Murdoch Company, or either of them, that the Newell-Murdoch Company owned stock in the Newell-Murdoch Realty Company, or that that firm had any interest in the property in the Forest Hill lots, except as agents for the owner. It is claimed by the plaintiff that there is a conflict of evidence on this point. Each of the three defendants testified positively that no statement of that sort was made and that they knew nothing of the interest of Newell and Murdoch in the plain-tiff corporation until the suit was begun. Murdoch, when questioned about the matter as a witness and asked if he told defendants that he had any interest in that corporation, said: "I don't know—I don't believe that the subject was touched on at all. I don't remember that it was." Asked if he disclosed to them what connection the partnership had with the corporation, he said: "I don't know that we did. It may have come out in the general conversation; it prob-ably did; I told them we were interested in the company I am sure. I didn't say to what extent. Our names were— the names were exactly similar; it was generally known, and they knew, I am sure, that Newell-Murdoch Realty Company was the product of this company." These state-ments of the witness, which are but statements, of conclu-sions and probabilities, following his emphatic statement that the subject was not touched upon, cannot be considered as a substantial contradiction of the positive testimony of the defendants that nothing of the kind was said. Furthermore there were other statements made in the course of conver-sation indicating that they held out to the defendants throughout the interview that it would be necessary for Newell-Murdoch Company to enter into some negotiations with the owners. Neither before nor after the delivery of the proposal appointing the firm agents of defendants to negotiate the exchange did that firm disclose the fact that they were themselves officers of the Newell-Murdoch Realty Company and that they could, as such, then and there im-mediately close the transaction. There is no pretense what-ever that they ever stated to the defendants that they were the owners of the majority of the stock of the corporation and to that extent interested in the purchase of the property

and personally benefited by the transaction. The similarity of names did not put the defendants on inquiry, under these circumstances. The moment the firm became agents for defendants, if not before, its duty arose to inform defendants of the interest it had in the corporation, which was adverse to the interests of the defendants. The findings were contrary to these facts and to that extent they are not sustained by the evidence.

[1] A contract made under these circumstances cannot be specifically enforced. [2] Where an agent is employed by a vendor to negotiate a sale, and he is himself financially interested on the side of the vendee, by reason of a direct or indirect property interest which he has or will have in the property when it is acquired by the vendee, or in the price to be paid by the vendee, he must disclose that interest fully to the principal, and the principal with full knowledge of all the facts known to the agent, bearing upon its advisability, and of such interest, must act freely and of his own volition in making the deal, and if the agent fails to make such disclosure, where, as here, the vendee is aware of such failure, the sale may be avoided at the option of the vendor. A similar question arose in *Burke* v. *Bours,* 92 Cal. 108, [28 Pac. 57]. The court said: "Where a person buys for himself as the agent of his principal, danger surrounds the best interest of the principal, and it is the policy of equity to remove every temptation from the agent, by rigidly discountenancing all such transactions; and under the broad principles heretofore referred to, relating to the duties and obligations of trustees and agents, defendant's purchase of the realty cannot be sanctioned.' . . . It matters not that there was no fraud in this transaction, or that no injury resulted to Arguello from the sale. The rule is intended to prevent the possibility of wrong; and assuming that Bours paid full value for the property, and even acted in entire good faith throughout the transaction, still such facts form no defense where the purchase was made by the agent without knowledge of his principal. It necessarily follows that he is not the vendee under an executed contract of sale, is not in a position to enforce specific performance, and possesses no equity sufficient to defeat plaintiff's right to the recovery of the possession of this tract of land." In that case the vendor had brought suit in eject-

ment against a subagent of his own selling agent, which sub-agent had purchased the property for himself, without informing the seller that he was doing so. He had paid in full the purchase price asked and he set up this equity in opposition to the suit in ejectment by the seller. The same question arose in *Wickersham* v. *Crittenden*, 93 Cal. 29, [28 Pac. 790], where the court laid down the rule concerning the relations of the principal and agent, trustee and beneficiary, as follows: "For the reason that it is against public policy to permit persons occupying fiduciary relations to be placed in such a position that the influence of selfish motives may be a temptation so great as to overpower their duty and lead to a betrayal of their trust, the rule is unyielding that a trustee shall not, under any circumstances, be allowed to have any dealings in the trust property with himself, or acquire any interest therein. Courts will not permit any investigation into the fairness or unfairness of the transaction, or allow the trustee to show that the dealing was for the best interest of the beneficiary, but will set the transaction aside, at the mere option of the *cestui que trust.*" The proposition is too well settled to require further discussion or authority.

[3] A stockholder in a corporation has a beneficial interest, in proportion to the amount of his stock, in all the property of the corporation. While he has not the legal title thereto, he has an equitable interest therein. It has been expressly held that this interest is sufficient to defeat an action for specific performance where the corporation, as the purchaser, is seeking to enforce a contract of sale negotiated by its own agent, acting as the agent of the vendor, whereby the latter agreed to sell to the corporation. (*Foss Investment Co.* v. *Ater*, 49 Wash. 446, [95 Pac. 1017].) In that case the court said: "An agent to sell cannot himself become the purchaser directly or indirectly, without the knowledge and consent of his principal. Louis Foss, defendant's agent, was so closely identified with, and in such complete control of the plaintiff corporation, that practically he would have become the sole beneficiary of all profits and benefits that might accrue to the plaintiff as purchaser." In that case Foss, the agent, was the owner of 998 of the one thousand shares issued by the plaintiff company. In no other respect is there any difference between that case and this. The ex-

tent of the interest, however, is not to be weighed or measured in deciding a case of this kind. The agent must disclose his interest, whatever it be, or the deal will be voidable by the vendor whose property is the subject of the sale.

[4] It matters not whether the revocation of the authority by the defendant Wickham was received by the plaintiff company before its president had signed the acceptance or afterward. The managing officers of the corporation were the persons who, as agents, procured the proposal to be executed. The corporation, therefore, must be presumed to have had full notice of everything which was known to said persons, if any notice was necessary under the circumstances. The corporation is chargeable with full knowledge of the equities of the defendants in the matter and can no more be allowed to enforce the contract than could the agents who attempted to negotiate the same. No revocation of the proposal was necessary to the defense pleaded. The option to avoid the contract remained complete until the action was begun and was then available as a defense to the action.

For these reasons the judgment of the court below cannot be sustained. Several other questions are argued in the briefs, but this conclusion renders it unnecessary to consider them.

The judgment is reversed.

Lawlor, J., Wilbur, J., Angellotti, C. J., Olney, J., and Lennon, J., concurred.

Rehearing denied.

All the Justices concurred.