[S. F. No. 11663. In Bank.—July 9, 1926.]

In the Matter of the Estate of MARY EMILIE PARROTT, Deceased. JOHN PARROTT, Jr., et al., as Executor, etc., Appellants, v. RAY L. RILEY, as Controller, etc., Respondent.

[1] INHERITANCE TAX—JOINT AND SEVERAL PROMISSORY NOTE—DE-DUCTION ALLOWABLE.—In determining an inheritance tax, it is proper to allow a deduction of only one-half of the amount owing at the time of the decedent's death on a promissory note, executed by the decedent and her brother as joint and several makers, and secured by a mortgage on real property (the value of which is greatly in excess of the amount due on the note) owned by the decedent and her brother in equal undivided interests, where, pending the administration of the estate, and at a time before the estate has paid any inheritance tax whatever and before the appraiser has made his report in said matter, said brother has paid the note-holder and mortgagee one-half of the entire joint and several obligation of himself and the decedent on account of said note and mortgage, and thereafter the heirs and successors in interest of the decedent pay a portion of the balance due upon said obligation, and assume and agree to pay the balance and to hold said brother safe and harmless from any liability therefrom.

[2] ESTATES OF DECEASED PERSONS—JOINT AND SEVERAL NOTE—AL-LOWANCE OF CLAIM—CONTRIBUTION.—The formal presentation and allowance of a claim against the estate of the decedent for the full amount of the note and mortgage did not absolve the brother (the co-maker with the decedent) from his obligation, nor did it extinguish the legal right of the heirs of the decedent to compel contribution by him.

1. Deduction of mortgage debt, note, 16 L. R. A. (N. S.) 329. See, also, 24 Cal. Jur. 464; 26 R. C. L. 229.

[3] INHERITANCE TAX—DEBTS ALLOWABLE.—The Inheritance Tax Act takes notice of a debt which has actual existence, and it does not attempt to artificially create a debt where in fact none exists.

[4] ESTATES OF DECEASED PERSONS—JOINT AND SEVERAL OBLIGATION—AMOUNT OF ESTATE'S INDEBTEDNESS.—The fact that a note, as between the payors and the payee, possesses the potentialities of an enforceable demand against either one of two debtors, affects the estate of either payor only in the proportion that such payor is required to pay it; and the amount that the estate of one of the payors is required to pay on said obligation is the amount of the estate's indebtedness; and the allowance of a claim against the estate for the full indebtedness will not have the conclusive force and effect of a judgment, but is subject to attack.

[5] INHERITANCE TAX—PROPERTY SUBJECT TO TAX—TIME.—Only property which exists at the time of the decedent's death is subject to the inheritance tax, and the right of the state to the tax accrues at the time of death, but this does not mean that the tax may not be thereafter determined, and when so determined it relates back to the time of death.

[6] ID. — STATUTORY CONSTRUCTION — REASONABLE INTERPRETATION. — Revenue or taxation acts are not to be approached with a spirit of hostility and with a purpose of ignoring the intention of the legislature, even though it should clearly appear in the body of the act; and the maxims of jurisprudence that "interpretation must be reasonable" and that a statute is to be "liberally construed with a view to effect its objects and to promote justice" are generally applicable to such acts and must be given effect, and no construction should be given a statute which would make its application impracticable, unfair or unreasonable.

(1) 37 Cyc., p. 1581, n. 72.     (2) 24 C. J., p. 277, n. 68.     (3) 37 Cyc., p. 1581, n. 72.     (4) 37 Cyc., p. 1581, n. 72.     (5) 37 Cyc., p. 1559, n. 95.     (6) 36 Cyc., p. 1190, n. 81.

APPEAL from an order of the Superior Court of San Mateo County confirming the report of an inheritance tax appraiser. George H. Buck, Judge. Affirmed.

The facts are stated in the opinion of the court.

Knight, Boland, Hutchinson & Christin for Appellants.

4. Collateral attack upon allowance, note, 65 Am. Dec. 125. See, also, 11 Cal. Jur. 756; 11 R. C. L. 200.

5. See 24 Cal. Jur. 460; 26 R. C. L. 232.

6. See 23 Cal. Jur. 805; 24 Cal. Jur. 29; 25 R. C. L. 1092; 26 R. C. L. 233.

Dion R. Holm and A. W. Brouillet, Assistant Inheritance Tax Attorneys, and Wesley E. Martin, Inheritance Tax Attorney, for Respondent.

SEAWELL, J.—Mary Emilie Parrott died March 1, 1922, a resident of the county of San Mateo, this state. The fair market value of her estate was appraised by the inheritance tax appraiser at $1,301,470.69.

The sole question presented by this appeal is whether the appraiser should have made a deduction of $260,000, as evidenced by a joint and several promissory note made by her and her co-maker, from the market value of said estate, instead of a deduction of but one-half of said amount, to wit, $130,000, which deduction was allowed by him as a debt owing by her at the time of her demise. The appeal was taken from that portion of the order of the court confirming the inheritance tax appraiser's report allowing a deduction of but $130,000.

The case is submitted upon an agreed statement of facts. Decedent left a brother surviving her, Joseph A. Donohoe. Prior to her death she and her said brother made, executed and delivered their joint and several promissory note, secured by a mortgage upon real property owned by them in equal undivided interests, to the Hibernia Savings & Loan Society, or order, in the principal sum of $340,000. At the date of decedent's death said promissory note of $340,-000 had been drawn upon by decedent and her said brother, in equal amounts, to the extent of $260,000, which latter sum constituted the joint and several indebtedness of said decedent and her said brother, and was due and payable at the date of the death of the former. In due course thereafter, said Hibernia Savings & Loan Society, mortgagee, filed its claim against the estate of said Mary Emilie Parrott, deceased, for the full amount owing on said note, to wit, $260,000. On September 20, 1922, the claim was allowed by the executor and executrix and subsequently was allowed and approved by the court. Thereafter the principal sum due on said note was increased to $287,000. The solvency of Donohoe at all the times herein mentioned is an admitted fact.

On January 9, 1925, pending the settlement of the estate of Mary Emilie Parrott, deceased, Joseph A. Donohoe, the

co-maker, paid individually to said Hibernia Savings & Loan Society one-half of the entire joint and several obligation of himself and decedent, which payment included $143,500 as principal, and $509.20 as interest, aggregating $144,-009.20. On March 10, 1925, the heirs and successors in interest of decedent paid on account of the balance due on said joint and several transaction $130,932.75, and agreed to pay the balance of the principal and interest to said note-holder and mortgagee and to hold said Joseph A. Donohoe harmless from any liability thereon.

[1] The facts of the case speak in complete vindication of the trial court's action. It is the stipulated fact that decedent and her brother owned in equal undivided interests real property located at Market and Taylor Streets, city and county of San Francisco, the value of which was $1,000,000. This valuation admittedly gave them as tenants in common an equity in excess of $600,000 over and above the principal sum of said note and mortgage. As owners of said real property they jointly and severally executed the note and mortgage and received $260,000 in equal shares for the use and benefit of each. Mary Emilie Parrott died March 1, 1922. About seven months thereafter the claim of the mortgagee for the full amount of principal and interest as evidenced by said note was presented to the estate and approved as provided by the probate law. On January 9, 1925, pending the administration of said estate, and at a time before the *estate* had paid any inheritance tax whatever, and before the appraiser had made his report in said matter, the co-maker, Joseph A. Donohoe, jointly and severally liable with said Mary Emilie Parrott, paid said note-holder and mortgagee $144,009.20, which sum was in full of his one-half liability on account of the principal sum and interest then due on said note and mortgage. Two months thereafter the heirs and successors in interest of decedent paid on account of themselves upon the principal then due $130,932.75, ''and assumed and agreed to pay the balance of the principal and interest upon said note and mortgage, and to hold said Donohoe safe and harmless from any liability therefrom.'' Thus the mortgage lien upon the interest of said Donohoe and the heirs of Mary Emilie Parrott was discharged with the exception of an unpaid balance owing from said heirs to said mortgagee. It will

be observed that Joseph A. Donohoe, whose solvency at all times mentioned in the proceedings was admitted, paid one-half of the entire joint and several indebtedness before the inheritance tax appraiser made his computation and report showing any deductible indebtedness from the value of the estate. By the payment of one-half of said indebtedness, Donohoe, of course, acknowledged his liability to that extent, and by the heirs agreeing to hold him harmless as to the unpaid balance they also acknowledged the existence of a mutual understanding, which may well be implied as having existed from the inception of the transaction, that Donohoe's indebtedness arising out of said transaction was not to be considered as an indebtedness of the estate, but that said indebtedness was to be borne in equal amounts by the makers of said note, their heirs or successors in interest. Donohoe and Mrs. Parrott owned a transferable, inheritable interest in the real property mortgaged, and Donohoe having paid the whole of his portion of the indebtedness before Mrs. Parrott's heirs paid any part of theirs, the discharged obligation of Donohoe could not be treated as an unsatisfied obligation of Mrs. Parrott, or of her heirs or successors. [2] The formal presentation and allowance of the indebtedness against the Parrott estate did not absolve Donohoe from his obligation, nor did it extinguish the legal right of the heirs of said co-maker to compel contribution by him. The remedy given by statute to a creditor to pursue the estate of the co-maker of a joint and several promissory note for the full amount thereof does not destroy the right of the heirs of said co-maker to enforce contribution by the other maker. Donohoe's interest in the real property was at no time subject to an inheritance tax, while the interest passed by the decedent to her heirs was liable for such tax. His portion of the obligation, though unextinguished at the time of the death of decedent, but thereafter paid, could not be shifted from himself to the Parrott estate for the purpose of furnishing a fictitious basis of a tax reduction computation in favor of said estate. The mortgage debt was a lien upon the real property of Joseph A. Donohoe and the estate of the decedent, tenants in common, and no suit could have been maintained against the executor and executrix of said estate unless a claim was first presented to the representa-

tives of said estate. The debt never lost its joint and several character, no matter which obligor paid it, and if, as in this case, the surviving obligor paid his portion of said indebtedness such portion could not be regarded or considered as a subsisting debt of the other.

The procedural rules of probate law do not possess judicatory powers in matters to which manifestly they were not intended to apply. [3] The Inheritance Tax Act (Stats. 1913, p. 1066) is quite convincing to the point that a debt of which the act takes notice is one which has actual existence, and it does not attempt to artificially create a debt where in fact none exists. [4] The fact that the note, as between the payors and payee, possessed the potentialities of an enforceable demand against either one of the debtors, affected his or her estate only in the proportion that he or she was required to pay it. The amount that the estate was required to pay on said obligation was the amount of the estate's indebtedness. No greater demand than was paid by the estate was enforceable against it. The allowance of the claim did not have the conclusive force and effect of a judgment. It was subject to attack. (Sec. 1636, Code Civ. Proc.; *Estate of Loshe*, 62 Cal. 413.)

In cases of doubtful validity the question of deduction may be postponed until the doubt is resolved. (*Matter of Dimon*, 82 App. Div. 107 [81 N. Y. Supp. 428].) The act, which is very comprehensive, expressly recognizes the impracticability of determining the indebtedness of a decedent at the time of death, and provides in numerous sections for the refund of taxes erroneously paid as well as for the assessment of the tax in cases where deductions for debts have been erroneously made. [5] It is true that only property which exists at the time of the decedent's death is subject to the tax and the right of the state to the tax accrues at the time of death, but this does not mean that the tax may not be thereafter determined, and when so determined it relates back to the time of death. No question of after accrued or acquired property is presented by this case, the question here being the amount of the allowance that should be made as a debt reduction.

[6] We think there is no room in this case for the play of the strict construction rule. The order appealed from is sustained by a fair interpretation of the act. Revenue or

taxation acts are not to be approached with a spirit of hostility and with a purpose of ignoring the intention of the legislature, even though it should clearly appear in the body of the act. The maxims of jurisprudence that "interpretation must be reasonable" (sec. 3542, Civ. Code), and that a statute is to be "liberally construed with a view to effect its objects and to promote justice" (sec. 4, Civ. Code) are generally applicable and must be given effect. The interpretation of tax statutes must in all cases be reasonable. (*Riley* v. *Havens*, 193 Cal. 432 [225 Pac. 275].) No construction should be given a statute which would make its application impracticable, unfair or unreasonable. (*Watson* v. *Greely*, 69 Cal. App. 643 [232 Pac. 475].)

The order is affirmed.

Richards, J., Curtis, J., Shenk, J., and Waste, C. J., concurred.