[Civ. No. 3445.   Fourth Dist.   Nov. 25, 1946.]

A. GREGORY, Respondent, v. THE STATE OF CALIFORNIA, Appellant.

James W. Hickey, Inheritance Tax Attorney, Raymond G. LaNoue, Deputy Inheritance Tax Attorney, and C. G. Kolts, J. Gould and J. D. Lear, Assistant Deputy Inheritance Tax Attorneys, for Appellant.

Surr & Hellyer for Respondent.

MARKS, J.—This is an appeal from a judgment whereby plaintiff recovered $11,295.41, together with interest from November 11, 1943. The principal sum was paid under protest as a gift tax assessed on the conveyance, by him to the Redlands Security Company on December 31, 1942, of the Platt Building in San Bernardino, California. The facts are not in dispute. We will hereafter refer to the Redlands Security Company as the corporation.

The corporation was a family company, plaintiff owning 40 per cent of its stock and his four children and a nephew, who evidently was considered a member of his family, owning 60 per cent in various amounts. The corporation had a net worth of at least $750,000. Plaintiff had been its manager for many years and testified that he operated it about as he pleased. During the years 1937, 1938 and 1939 he received an annual salary of $1,200. He received no salary during the next three years. It was proposed to pay him a salary of $500 per month after the transfer of the Platt Building, but wages and salaries were frozen in October, 1942, by executive order and he was permitted to receive $250 per month by the federal agency.

Plaintiff has explained in considerable detail the reasons which prompted his transfer of the property. The income from the Platt Building had decreased because the younger tenants had vacated their offices to enter the Armed Forces of the United States. The remaining income was not sufficient to permit plaintiff to meet his usual obligations, both legal and charitable, with enough left to pay his personal living expenses. He made the transfer to shift some of those obligations, both legal and charitable, to the corporation and to acquire sufficient income to support himself.

The trial judge based his judgment for plaintiff on the following findings of fact:

## "II

"The transfer of the Platt Building by plaintiff to Redlands Security Company (hereinafter called 'Company') referred to in the pleadings was made without donative intent. Said Company was not a donee and plaintiff made no gift to said Company or to anyone in such transfer.

## "III

"The market value of the property transferred by plaintiff to said Company was at the time of transfer the sum of $15,000.

## "IV

"No gift tax was or is payable to the State of California upon or in receipt of such transfer."

The California Gift Tax Act of 1939 (Stats. 1939, p. 2079, now codified into Rev. & Tax Code, §§ 15101 to 16652, inclu-

sive), places a tax on direct or indirect gifts made with donative intent to a person which word is defined to include "any person, firm, partnership, association, corporation, company, syndicate, estate, trust, business trust, or organization of any kind." (See §§ 4, 5, 6, 10, 13 and 36 of the act.)

We are cited to no California decisions on the questions here presented, construing the Gift Tax Act of 1939. In *Douglas* v. *State of California,* 48 Cal.App.2d 835 [120 P.2d 927], the following well established rule of construction is stated:

"In important particulars our state act is modeled after the federal gift tax, first enacted in 1924, repealed as of January 1, 1926, and enacted again in 1932. (1924: 26 U.S.C.A., 1924 to date, p. 79, secs. 319-324; 1932: 26 U.S.C.A., 1924 to date, p. 580, secs. 501-532.) There are no decisions under the state act to aid in solving the problem presented by this case. However, in view of the fact that material provisions of the federal statute and state act are substantially identical, decisions interpreting the federal law furnish a guide in construction of the state act. Where legislation is patterned after a statute of another state or the federal government which has been judicially construed there is a very strong presumption of intent to adopt the construction as well as the language of the prior enactment. (*Union Oil Associates* v. *Johnson,* 2 Cal.2d 727, 735 [43 P.(2d) 291, 98 A.L.R. 1499]; *Holmes* v. *McColgan,* 17 Cal.2d 426, 430 [110 P.2d 428].)" We will, therefore, have to turn to federal court decisions to aid us in the solution of the problems before us.

The finding of the trial court to the effect that the transfer to the corporation was made without donative intent is challenged by defendant as contrary to both the evidence and the law. It is pointed out that in paragraph 5 of the complaint it is alleged that as far as plaintiff and his family are concerned the conveyance was made for their benefit and with donative intent as to each member of the family. This is not directly denied in the answer. However, it is alleged that the gift was made to the corporation with donative intent as to it. Further, plaintiff testified that he would not have made the conveyance if the stock in the corporation had not been owned by himself and the members of his family.

The question of whether or not there was a gift of the property with donative intent divides itself into several parts.

First, was there a gift at all from which the donative intent must be presumed? Second, if there was such a gift, was the donee the corporation or were all or a part of the stockholders the donees? Third, if there was a donative intent to confer economic benefits on all or part of the stockholders of the corporation so that there was an intention to confer as indirect benefit upon them, can plaintiff be considered as a donee to the extent of 40 per cent of the property conveyed, representing his ownership of 40 per cent of the corporate stock?

In 24 American Jurisprudence, page 730, we find the following:

"A gift has been judicially defined as a voluntary transfer of property by one to another without any consideration or compensation therefor. It has sometimes been defined by statute as a transfer of personal property made voluntarily and without consideration, and also, generally, as that which is given, anything given or bestowed, or any piece of property voluntarily transferred by one person to another. Hence, it is apparently well established at law that to constitute a valid gift a transfer must be voluntary, absolute, and without consideration."

■ The evidence indicates that the conveyance of the Platt Building had the three attributes necessary to constitute a gift. There is nothing in the record to indicate any legal compulsion on plaintiff to make the conveyance so it must be regarded as voluntary. It was also absolute as there is nothing to indicate the reservation of any interest in the grantor, disregarding for the moment any consideration of his ownership of 40 per cent of the corporate stock. It was also without consideration as it is clear that the salary of $500 per month which plaintiff hoped to receive from the corporation was to be paid him as compensation for his services as manager and not as consideration for the conveyance of the property. As the transaction possessed all the characteristics of a gift the inference necessarily follows, in the absence of any showing to the contrary, that the conveyance was a gift made with donative intent.

The question of who was the donee or donees of the gift presents more difficulty and finds its answer by analogy in cases involving gifts to trusts which have been before the Board of Tax Appeals and the federal courts.

Prior to the decision of the case of *Helvering* v. *Hutchings*, 312 U. S. 393 [61 S.Ct. 653, 85 L.Ed. 909], the Board of Tax Appeals had held rather consistently that where a trustor created an irrevocable, present trust (as distinguished from one conveying a future interest), not subject to modification, the corpus of the trust conveyed to the trustee constituted a present gift to the trust subject to a single tax exemption or exclusion. This was on the theory that the statute defined a person (donee) as including a trust; that a trust was a legal entity well recognized in the law; that as the trust took legal title to the property there was a direct gift to it subject to but one exclusion. (See *Hutchings* v. *Commissioner*, 40 B.T.A. 27; *Thompson* v. *Commissioner*, 42 B.T.A. 121.)

In *Rubenstein* v. *Commissioner*, 41 B.T.A. 220, the Board of Tax Appeals was confronted with not less than three decisions of Circuit Courts of Appeals holding that where a trustor conveyed property to a trustee creating a present vested estate in the corpus without any power to revoke or modify the trust, there was an indirect benefit conferred on the beneficiaries and that the gift was to them; that the tax was to be computed on the value of the indirect gift to each beneficiary and that the donor was entitled to his exclusion for each beneficiary. The Board of Tax Appeals merely reversed its former policy and followed the decisions of the Circuit Courts of Appeals in deciding the Rubenstein case.

The history of the case of *Thompson* v. *Commissioner*, 42 B.T.A. 121, and Thompson's appeal, B.T.A. memo opinion, C.C.H. Dec. 11, 767A, are interesting and informative. Thompson organized a Kentucky corporation in 1932 and transferred to it property of the value of $33,578.52 in exchange for 100 shares of its capital stock, 50 shares of which were subsequently transferred so that he was the owner of 50 shares individually and of 40 shares as trustee for his four children and his wife was the owner of 10 shares. He made other gifts to the corporation. In his gift tax return Thompson claimed no tax due on one-half of the gifts represented by his 50 per cent of the capital stock of the corporation and claimed exclusions for the shares owned by the other members of his family. These cases were decided by the Board of Tax Appeals prior to the decision of *Helvering* v. *Hutchings, supra,* by the Supreme Court of the United States

and the Board of Tax Appeals held that the gifts were to the corporation and not to the stockholders and assessed gift taxes in the sum of $23,235.25. Thompson appealed both cases to the United States Circuit Court of Appeals, Sixth Circuit. A few months after the decision in *Helvering* v. *Hutchings, supra,* the Circuit Court of Appeals on stipulation of counsel ordered both judgments of the Board of Tax Appeals reversed with instructions to reduce the judgments by sums totaling $17,888.03. (*Thompson* v. *Commissioner,* No. 10165, U. S. Tax Cases, 42-1 P. 10224 and case No. 10166, with the same title appearing on the same and the following page.) While exact computation of the tax is impossible from the information available here, it seems evident that Thompson's contention that one-half of the gifts were tax free because made to himself as owner of one-half of the corporate stock and that certain of the exclusions claimed by him were allowable must have been sustained.

The case of *Scanlon* v. *Commissioner,* 42 B.T.A. 997, is also informative. Scanlon organized a corporation and became the sole stockholder except for five qualifying shares issued to the directors. He transferred to the corporation stock of considerable value in other corporations. On dissolution all assets were distributed to him. The directors had surrendered their qualifying shares and received nothing. The Board of Tax Appeals held no gift tax was due because there was no true gift within the meaning of the gift tax law as Scanlon's "interest as sole stockholder in the corporation's property gave him a corresponding compensation for the transfer."

The courts in construing acts of Congress frequently have recourse to the reports of committees proposing the legislation. These reports are considered valuable in determining the intent of the legislators in passing the laws.

The report of the Ways and Means Committee of the House contains the following comment on certain of the Gift Tax provisions of the Revenue Act of 1932:

"The words 'transfer . . . by gift' and 'whether . . . *direct or indirect'* are designed to cover and comprehend all transactions (subject to certain express conditions and limitations) whereby and to the extent (Sec. 503) that property or a property right is *donatively passed* to or conferred upon another, regardless of the means or device employed in its accomplishment. For example, (1) a transfer of property by

a corporation without a consideration, or one less than adequate and full in money or money's worth to B, would constitute a gift from the stockholders of the corporation to B; (2) *a transfer by A to a corporation owned by his children would constitute a gift to the children;* (3) a transfer of property to B where there is imposed upon B the obligation of paying a commensurate annuity to C, would be a gift to C.'' (Emphasis ours.)

The Supreme Court of the United States in the case of *Burnet* v. *Guggenheim,* 288 U.S. 280 [53 St.Ct. 369, 77 L.Ed. 748], had under consideration certain gift tax provisions of the Revenue Act of 1924. The taxpayer in 1917 had created two revocable trusts, one for the benefit of his son and one for the benefit of his daughter. In 1925 the taxpayer surrendered his power of revocation thus creating a present vested estate in the beneficiaries in the corpus of the trust. The Supreme Court held that the surrender of the power of revocation constituted a gift to the beneficiaries. In discussing the problem the court said:

'' 'Taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed —the actual benefit for which the tax is paid.' . . . The statute is not aimed at every transfer of the legal title without consideration. Such a transfer there would be if the trustees were to hold for the use of the grantor. It is aimed at transfers of the title that have the quality of a gift, and a gift is not consummate until put beyond recall. . . . The tax on gifts was something new. Even so, the concept of a transfer, so painfully developed in respect of taxes on estates, was not flung aside and scouted in laying this new burden upon transfers during life. Congress was aware that what was of the essence of a transfer had come to be identified more nearly with a change of economic benefits than with technicalities of title.''

In *Welch* v. *Davidson,* 102 F.2d 100, it appears that in 1934 Davidson created an irrevocable trust in favor of his six daughters. During the same year he gave a home worth $20,000 to one of the daughters. In making his gift tax return Davidson claimed $35,000 in exclusions, being $5,000 for each daughter beneficiary under the trust and $5,000 on the gift of the home. The Circuit Court of Appeals allowed

a $5,000 exclusion for each daughter, beneficiary under the trust, saying:

"The statute of 1932, like that of 1924, was 'not aimed at every transfer of the legal title without consideration.' It was aimed at transfers that 'had come to be identified more nearly with a change of economic benefits than with technicalities of title', at 'transfers of the title that have the quality of a gift.' Surely transfer of title to the trustee did not partake of the quality of a gift. The trustee was not the object of the plaintiff's bounty. The transfer to it of the bare legal title effected 'no change of economic benefits' in its behalf. The beneficiaries are the donees."

*Rheinstrom* v. *Commissioner of Int. Rev.*, 105 F.2d 642, is also a trust case and quotes from and follows *Welch* v. *Davidson, supra,* in holding that the gift was to the children of the trustor who were named beneficiaries and not the trustee. Consequently an exclusion was allowable for each beneficiary. The trustor also reserved to herself a life estate in 40 per cent of the trust. Both the Board of Tax Appeals (37 B.T.A. at p. 312), and the Circuit Court of Appeals agreed that no tax should be levied on this reserved life estate because it was not a gift as the trustor and the beneficiary of this portion of the trust fund was one and the same person. Clearly there was no change in the economic benefits in this portion of the trust funds.

*Hutchings* v. *Commisisoner of Int. Rev.*, 111 F.2d 229, was also a case involving a trust created by the trustor for the benefit of her seven children. The question presented was whether one or seven exclusions were allowable. The Circuit of Appeals held that seven exclusions were allowable, as the gifts were to the children and not to the trust. In discussing the question it was said:

"Petitioner is in the extremely fortunate position of being able to point out that every Circuit Court of Appeals and every District Court which has passed on the question has held that the objects of the donative intent in such cases and therefore the recipients of the gifts, are the beneficiaries, not the trustees, who are the mere instruments for carrying out the intent, and that the Board itself has in later cases, taken the same view."

The same case was reviewed by the Supreme Court of the United States (*Helvering* v. *Hutchings, supra*). In holding that the gift was to each beneficiary under the trust and

not to the trust and that an exclusion should be allowed for each beneficiary, it was said:

"The gift tax provisions are not concerned with mere transfers of legal title to the trustee without surrender by the donor of the economic benefits or ownership and his control over them. A gift to a trustee reserving to the donor the economic benefit of the trust or the power of its disposition, involves no taxable gift. It is only upon the surrender by the donor of the benefit or power reserved to himself that a taxable gift occurs (*Sanford's Estate* v. *Commissioner,* 308 U. S. 39, 60 S.Ct. 51, 84 L.Ed. 20; *Rasquin* v. *Humphreys,* 308 U.S. 54, 60 S.Ct. 60, 84 L.Ed. 77), and it would seem to follow that the beneficiary of the trust to whose benefit the surrender inures, whether made at the time the trust is created or later, is the 'person' or 'individual' to whom the gift is made. . . .

"The reports of the committees of Congress used words in their natural sense and in the sense in which we must take it they were intended to be used in sec. 504 (b) when, in discussing sec. 501, they spoke of the beneficiary of a gift upon trust as the person to whom the gift is made."

The foregoing decisions deal largely with trusts which are legal entities and which hold the legal title to properties for the benefit of the beneficiaries who are the equitable owners. A corporation is also a legal entity with many attributes differing materially from those of trusts. We must, therefore, determine whether or not the principles announced in the cases involving trusts are applicable here where the grantee of the property was a corporation. Before reviewing the California authorities on this question we should again advert to the report of the House Ways and Means Committee where it is clearly stated that a gift by a donor "to a corporation owned by his children would constitute a gift to the children."

In *MacDermot* v. *Hayes,* 175 Cal. 95, at page 114 [170 P. 616], it is said:

"A corporation is created and given a legal existence in order that it may, in its legal capacity, hold and manage the property transferred and business committed to it by its stockholders. They are the beneficial owners of the corporate property. The corporation is their agency and holds the property for their benefit and in trust for them. The

interest of each stockholder in the property is the proportion which his shares of stock bear to all the stock outstanding. The certificates are not property in the real sense, but are merely evidences of the undivided interests of the several stockholders in the corporate assets and business.'' In *Atkins* v. *Gamble*, 42 Cal. 86, it was held that the stockholders of a corporation are joint owners of the franchise and property of the corporation and that the stock certificates furnish evidence of the quantum of interest held by each stockholder. (See, also, *San Diego* v. *San Diego etc. Co.*, 44 Cal. 106.)

In *People* v. *Badlam*, 57 Cal. 594, the court said:

''This property is held by the corporation in trust for the stockholders, who are the beneficial owners of it in certain proportions called shares, and which are usually evidenced by certificates of stock. The share of each stockholder is undoubtedly property, but it is an interest in the very property held by the corporation.'' *Estate of Duffill*, 180 Cal. 748 [183 P. 337], and *Newell-Murdoch Realty Co.* v. *Wickham*, 183 Cal. 39 [190 P. 359], are to the same effect.

In *W. F. Boardman Co.* v. *Petch*, 186 Cal. 476 [199 P. 1047], it is said:

''A corporation is the creature of its stockholders and it holds its property in trust for them. As between themselves and the corporation the stockholders are the beneficial owners of the property held by the corporation. (*Havemeyer* v. *Superior Court*, 84 Cal. 362, [18 Am.St.Rep. 192, 10 L.R.A. 627, 24 P. 121]; *Ashton* v. *Dashaway Assn.*, 84 Cal. 65, [7 L.R.A. 809, 22 P. 660, 23 P. 1091]; *Hobbs* v. *Tom Reed etc. Co.*, 164 Cal. 499, 501 [43 L.R.A.N.S. 1112, 129 P. 781]; *Rossi* v. *Caire*, 174 Cal. 81, [161 P. 1161].) ''

We conclude from the foregoing authorities that there is sufficient similarity between the equitable interest of a stockholder in the property of a California corporation and the equitable interest of a beneficiary in the corpus of a trust to make the decisions of the Supreme Court of the United States and the Circuit Courts of Appeals in trust cases applicable to the facts of the instant case. Therefore, under those rules which seem to be thoroughly established we are of the opinion that there was an indirect gift to the members of plaintiff's family, including his nephew, who were stockholders and that he was entitled to an exclusion for each one of them.

■ The situation of plaintiff as owner of 40 per cent of the stock of the corporation presents an additional question. If we follow the economic benefit theory announced by the federal courts there was no taxable gift involved insofar as 40 per cent of the value of the Platt Building is concerned as no economic benefit was transferred when the gift was made. There was only a change in the form of the title. Plaintiff was the owner of the entire estate and he became the equitable owner of 40 per cent of it. (See *Rheinstrom* v. *Commissioner of Int. Rev.*, *supra;* *Helvering* v. *Hutchings*, *supra.*) *Scanlon* v. *Commissioner*, 42 B.T.A. 997, is direct authority for the conclusion that there could be no tax assessed on the proportion of the value of the Platt Building represented by the 40 per cent of stock in the corporation owned by plaintiff. No tax should be collected on this portion of the value of the property conveyed to the corporation.

The parties disagree as to the net value of the Platt Building at the time of the conveyance. They agree that the building had a value of $240,000 but cannot agree on the amount to be deducted because of an incumbrance.

In 1938 plaintiff and his wife (now deceased) and the corporation executed a joint and several note in the principal sum of $375,000 secured by a deed of trust on the Platt Building and several parcels of property owned by the corporation. Instalments had been paid on the principal so that on December 31, 1942, there remained $318,147.81 unpaid. The deed of trust contained a release clause so that the Platt Building could be released from the lien of the deed of trust upon payment of $225,000. The trial court found the net value of the Platt Building at the time of the conveyance to be $15,000 by deducting the amount necessary to release it from the lien, $225,000 from $240,000, the admitted gross value of the property. The difficulty presented in this phase of the case arises from an agreement between plaintiff and the corporation whereby the plaintiff agreed to pay 40 per cent of the total debt unpaid on December 31, 1942, or $127,259.12, and the corporation the balance.

Defendant argues that only the amount which plaintiff was required to pay to satisfy the debt should be deducted from the value of the property, leaving a value of $112,740.88, actually conveyed. Plaintiff seeks to support the finding that the net value conveyed was only $15,000.

A somewhat similar situation was involved under the California Inheritance Tax Act in *Estate of Parrott*, 199 Cal. 107 [248 P. 248]. Deceased and her brother, Joseph A. Donohoe, owned a building in San Francisco worth $1,000,000, on which there was a mortgage lien of $260,000 at the time of her death. Donohoe was at all times solvent and paid his half of the debt after the death of his sister. The question decided was the amount of the deduction to be taken from half the value of the building in fixing the inheritance tax. The Supreme Court held that only $130,000 should be deducted as it was the actual portion of the debt owed by the deceased, her brother being solvent and having paid his portion of the debt after her death. Thus it is the actual and not the potential liability that should fix the amount of the deduction.

The same rule should be applied here and only the amount that plaintiff would be obligated to pay to satisfy his portion of the debt should be deducted from the value of the building, he having the right of contribution from a very solvent corporation for any additional amount he might pay.

To sum up, we have reached the following conclusions: That the clear net value of the Platt Building was $112,-740.88 at the time of its conveyance to the corporation; that there was no taxable gift from plaintiff to himself of 40 per cent of this value represented by his ownership of 40 per cent of the stock of the corporation because as to this 40 per cent the conveyance represented merely a change of the legal title and not a change of the economic benefits; that the conveyance of 60 per cent of the clear value of the Platt Building constituted an indirect gift with donative intent to each of the other stockholders of the corporation in the proportion that the stock owned by each bore to the total issued stock of the corporation; that plaintiff is entitled to a lawful exclusion on each gift to each of such donees.

The trial court allowed plaintiff interest on the full amount of the gift tax paid by him from the date of the payment. Defendant urges this as error as a gift of state funds, citing *Molineux* v. *California*, 109 Cal. 378 [42 P. 34, 50 Am.St.Rep. 49], and *Estate of Stanford*, 126 Cal. 112 [54 P. 259, 58 P. 462, 45 L.R.A. 788].

As originally passed the Gift Tax Act of 1939 contained no provision for interest on the recovery of any overpayment. Section 74 of the act was amended (Stats. 1945, p. 838)

allowing interest on overpayments at the rate of six per cent per annum.

Counsel for plaintiff state in their brief that because it had to be filed promptly after its completion its author did not have sufficient time to properly investigate the question of interest. They, therefore, offered to remit all interest accruing prior to May 18, 1945, the effective date of the amendment. As the case must be referred back to the trial court for determination of the proper amount of the overpayment to be recovered by plaintiff the determination of the question of interest can be deferred to that time.

The judgment is reversed with instructions to the trial court to compute the proper amount to be recovered by plaintiff, together with interest, if any interest is recoverable, in accordance with the views herein expressed and then to enter judgment for plaintiff for the amount so determined. Neither party will recover costs of appeal.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied December 16, 1946, and the following opinion was rendered:

THE COURT.—Plaintiff has petitioned for a rehearing on two grounds: first, because this court did not decide the question of whether plaintiff was entitled to recover interest on the amount overpaid by him; and second, because the opinion does not specifically limit its holding to family corporations.

The question of whether or not interest was collectible, was not thoroughly briefed and the members of this court did not, and do not now, regard it as necessary for them to undertake the labor of briefing it, as the cause must be referred back to the trial court for further action.

What is said in an opinion relates solely to the facts of the case being decided and is limited by those facts. We had before us a corporation in which all the stock was owned by members of a family. Necessarily, the decision related only to such a corporation and to no other. To obviate any uncertainty, we here state that the decision can be applied only to such family corporations.

With this explanation the petition for rehearing is denied

Appellant's petition for a hearing by the Supreme Court was denied January 23, 1947. Traynor, J., voted for a hearing.